THE STATE OF MINNESOTA

*vs.*

JOHN RYAN.

An indictment substantially in the form given in the General Statutes is
sufficient.

The allegation that the defendant on the 4th day of July, 1867, killed the
deceased, implies, *ex vi termini*, that the latter died on that day.

State of Minnesota v. Ryan.

A verdict that clearly, and without any doubt, shows the intention of the jury, and their finding on the issues presented to them for trial, is sufficient.

A verdict in the following words, though informal, is not fatally defective: "We the jury in the case of the State of Minnesota against John Ryan, do find a verdict of murder in the first degree."

No error that is not a violation of some positive rule of law, or that may not possibly prejudice the appellant, is ground for reversal on appeal.

*Chap.* 86 *of the General Laws of* 1868, allowing the State to peremptorily challenge seven petit jurors in certain criminal actions, applies in the trial of offenses committed before its passage, and is not in conflict with that clause in the Constitution forbidding the enactment of *ex post facto laws.*.

It is not error in the Court to permit the jury to separate during the trial in a criminal prosecution.

The fact *that the record does not show* that the officer attending the jury on their retirement was sworn, or that the defendant was not present in Court after his arraignment until he was called for sentence, does not make void the proceedings. The Court having acquired jurisdiction, all acts during the course of the trial are presumed to have been rightly and legally done. If there is error in fact, not apparent on the record, it is for the defendant to make it appear by a " case " or bill of exceptions.

The defendant, who was indicted, tried, convicted and sentenced, in the District Court for the county of Steele, for the crime of murder, removes the cause to this Court by appeal. The case is fully stated in the opinion of the Court.

W. A. GORMAN and GORDON E. COLE for Appellant.

F. R. E. CORNELL, Attorney General, for Respondent.

*By the Court*—WILSON, Ch. J.—The indictment on which the defendant was tried is in the following language :

"John Ryan, the defendant herein, is accused by the grand jury of the county of Steele and State of Minnesota, by this indictment, of the crime of murder in the first degree, com·

mitted as follows: The said John Ryan, on the 4th day of July, 1867, at the city of Owatonna, in said county of Steele, without the authority of law, and with malice and aforethought, with a premeditated design to effect the death of one Thomas Dorsey, killed him, the said Thomas Dorsey, by then and there, feloniously, with force and arms, assaulting, beating, striking and stabbing him, the said Thomas Dorsey, with a deadly weapon, to wit, a knife, then and there in the possession of the said John Ryan, and inflicting on him, the said Thomas Dorsey, then and there, with said weapon, divers injuries and mortal wounds, of which the said Thomas Dorsey died, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Minnesota."

The jury, after hearing the evidence, and charge of the Court, returned this verdict: " We the jury in the case of the State of Minnesota against John Ryan, do find a verdict of murder in the first degree."

The defendant's counsel thereupon moved the Court for a new trial, and in arrest of judgment; which motion was denied, and judgment having been pronounced and rendered on the verdict, the defendant removed the cause into this Court by appeal.

The homicide with which the defendant is charged was committed in July, 1867, and the indictment was found and the trial below had in April, 1868. By our law the penalty for murder in the first degree was death, until March 5th, 1868, when the legislature, by an act approved that day, abolished the death penalty as a punishment for that crime, except in cases where the jury recommend such punishment; but by section four of that act it is provided that "The provisions of this act shall not apply nor extend to any act done, nor offense committed prior to the passage hereof, but the provisions of law now in force, and applicable to the crime of

murder in the first degree, as well in respect to the penalty affixed to the commission of such crime, as in all other respects, shall be and remain in full force and effect as to such offense heretofore committed." *Laws* 1868, *Chap*. 88.

By another act approved March 5th, 1868, the State is allowed seven peremptory challenges to individual petit jurors, when the offense charged is punishable with death or imprisonment in the State prison for life. *Laws* 1868, *Chap*. 86. Prior to that the State had the right of challenge only for cause. On this trial the State peremptorily challenged one of the petit jurors, and the challenge was allowed by the Court, to which the defendant excepted.

The defendant urges, among other objections to the proceedings and judgment, that the indictment and verdict are insufficient; that *chapter* 86 *of the laws of* 1868 is applicable to the trial of crimes committed before its passage, is an *ex post facto* law, and therefore repugnant to the Constitution; and that if the last mentioned law is applicable, so also is *chapter* 88, and therefore the death penalty can not be inflicted, the jury not having so recommended.

The indictment I think is good. It is substantially in the form given in the general statutes, which this Court has decided and the statutes declare to be sufficient. The particular objections urged to it are: 1st. That it does not charge the offense of murder in the first degree. 2d. That it does not show that the offense was committed before the indictment was found. Our statutes declare the killing of a human being without the authority of law—when perpetrated with a premeditated design to effect the death of the person killed or any human being—murder in the first degree. Such a killing is by the indictment clearly charged, which is sufficient. *Gen. Stat.*, *chap*. 108, *secs.* 1 *and* 10.

The statute also declares the allegation of time sufficient,

if it can be understood therefrom " that the offense was committed at some time prior to the time of finding the indictment." This indictment not only comes up to this requirement, but I think it shows clearly that the offense was committed on the 4th day of July, 1867. The charge, that the defendant, on the fourth of July, 1867, killed the deceased, implies, *ex vi termini*, that the latter died on that day. No merely formal error can be considered, for our statute declares that "No indictment is insufficient, nor can the trial judgment, or other proceeding thereon, be affected by reason of any defect or imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendant upon the merits. *Chap.* 108, *sec.* 11.

*Secondly.*—As to the verdict, its form is not to be approved; but there is no set form of words in which a verdict is required to be rendered, and therefore, the only rational general rule that can be adopted by which to measure its sufficiency, is, does it show clearly, and without *any doubt*, the intention of the jury, and their finding on the issues presented to them? If it does, it cannot be declared bad without sacrificing substance and justice to form. No error that is not a violation of some positive rule of law, or which may not possibly prejudice the defendant, can be a ground for reversal on appeal. I think the language of the verdict leaves no doubt as to its meaning, or as to the intention of the jury. Its informality does not tend to render it obscure or ambiguous, or to prejudice the rights of the defendant, and therefore does not affect the judgment. See *Singleton & True vs. Sodusky*, 7 *J. J. Marshall*, 341; 10 *Bacon's Ab. Verdict*, 2.

*Thirdly.*—We next come to inquire whether the law of 1868, giving the State the right to peremptorily challenge seven petit jurors, is an *ex post facto* law. It is not, I think, to be doubted, but that the legislature meant by this law to

establish a rule for the government of all trials thereafter to be had, whether for crimes committed or to be committed. This being admitted, is this law opposed to that clause in the constitution forbidding the enactment of *ex post facto* laws? Mr. Chief Justice Marshall in delivering the opinion of the Court in *Fletcher vs. Peck*, 6 *Cranch*, 38, says: " An *ex post facto* law is one which renders an act punishable in a manner in which it was not punishable when it was committed;" which definition Chancellor Kent says is distinguishable for its comprehensive brevity and precision. 1 *Kent's Com.*, 409. See also to the same effect the definition or explanation of an *ex post facto* law given (by Mr. Hamilton) in the *Federalist No.* 84, in the opinions of *Patterson and Iredell, J. J; in Calder vs. Bull*, 3 *Dallas*, 395–398; *in* 1 *Blacksone's Com.*, 46; *in Sheppard vs. The People*, 25 *N. Y.*, 415; *and in Watson vs. Mucer*, 8 *Pet.*, 110.

Sec. 24 of the Declaration of Rights of the Constitution of Massachusetts, which was adopted in 1780, is in these words: " Laws made to punish, for actions done before the existence of such laws, and which have not been declared crimes by preceding laws, are unjust, oppressive, and inconsistent with the fundamental principles of a free government." This accords with the definition of an *ex post facto* law, given by Mr. Chief Justice Marshall, and shows clearly the class of laws which the framers of that Constitution thought should not be enacted *ex post facto*. To the same effect are the provisions on this subject in the Constitutions of Maryland, North Carolina and Delaware. When it is borne in mind that these Constitutions were framed before the Constitution of the United States, great light is reflected on that clause of the latter, which we are now considering. Both strike at the same pernicious class of legislation. See on this point No. 44 of the Federalist, by Mr. Madison. The language of our State Con-

stitution on this point is identical with that of the Constitution of the United States.

The above is, I think, a correct definition of such *ex post facto* laws as are prohibited by the Constitution, and if it is, then clearly the law in question is not within the class of legislation thus forbidden. It is not even retroactive; it relates neither to the crime nor the punishment for it, neither directly nor indirectly aggravates or changes either; it merely establishes the mode of proceeding in trials to be had after its passage; and if it is not technically and literally an *ex post facto* law, it certainly is not in spirit or meaning. That class of legislation is forbidden because it is unjust and oppressive. This law is neither. It secures to defendants a right to challenge any number of jurors to whom they can show any legal objections, and in addition twenty without assigning any cause therefor. If it has any effect, it is merely to make more certain an intelligent, fair, and impartial trial. If such legislation is an infringement of the defendant's constitutional rights, it is because he has a "right" to a partial jury, or to an inefficient or imperfect administration of the law. With just as much reason and justice might he claim that it would in such case be unconstitutional to make a jail more secure, or to provide more efficient means for his arrest, or retention, prior to and pending the trial, or to in any way make the punishment affixed to the crime more certain. The Constitution does not guard, secure or recognize such "rights." The very question here involved was raised in *Webster vs. The Commonwealth*, 16 *B. Monroe*, 16-40, and the Court in that case said: "In what manner is the prisoner affected by the exercise of the right of peremptory challenge on the part of the Commonwealth? It does not divest him of any right, although it may in its operation exclude from the panel some individual that he might desire to have upon the jury. It

does not interfere with his right of peremptory challenge. An impartial jury is all that he is entitled to under the Constitution. It has no tendency to deprive him of this right. He cannot claim the right to be tried by a partial jury—one that may be inclined to favor his escape from justice. He has no right to select a jury, although the law permits him to a limited extent to reject such persons as he is unwilling to be tried by." To this I assent. See also *Pary vs. The Commonwealth*, 3 *Grattan*, 632. It has been suggested that the definition of an *ex post facto* law given by Mr. Justice Chase in *Calder vs. Bull* is broad enough to embrace the law in question. That definition was adopted by the Supreme Court of the United States in *Cummings vs. The State of Missouri*, 4 *Wallace*, 325, and by this Court in the *State vs. Johnson*, 12 *Minn.*, 476. For myself I may be permitted to say with great deference that while I assented to the opinion in the latter case, considering it proper to follow the Supreme Court of the United States, I have not been able to bring my mind to assent to the correctness of that definition. It will be observed that Mr. Justice Chase's definition was not assented to by a majority of the Court in the case in which the opinion was delivered, nor has it, that I am aware of, been adopted by the Supreme Court of the United States in any case except the one cited above, and in that it was apparently taken without much reflection or consideration. But admitting for the present its correctness, without attempting to determine how far it might lead if carried to its logical consequences, it is sufficient to say, that it has not been held to embrace a case like this. See opinion of Mr. Justice Chase, 3 *Dallas*, 391, and opinion of Mr. Justice Miller (dissenting), in *ex parte Garland*, 4 *Wallace*, 391.

The argument that the power to inflict capital punishment was taken away by *Chapter* 88, *of the Laws of* 1868, is per-

haps best answered by the language of *section* 4 of that law, which I think shows, beyond a question, that the provisions of the act do not apply to offenses committed prior to its passage.

It was not error in the Court to permit the jury to separate during the trial. *Bilanski vs. The State of Minnesota*, 427; *Stephens vs. The People*, 19 *N. Y.*, 549.

The sixth objection in the defendant's brief—that *the record does not show* that the officer attending the jury on their retirement was sworn, may be considered with his seventh objection—*that record does not show* that the defendant was present in Court after his arraignment until he was called for sentence. It was on the trial in this Court admitted and stipulated by defendant's counsel, as a matter of fact, that the defendant was at the time of his arraignment and during the whole trial, and at the rendition of the verdict, and subsequent proceedings, personally present in Court. But this we think is not material. The record shows that defendant "was arraigned, and pleaded not guilty to the charges." There was no "case" or bill of exceptions made, and therefore we can only inquire whether there are errors apparent on the record. It showing that the Court had acquired jurisdiction, all acts during the course of the trial are presumed to have been rightly and regularly done, and its silence, here complained of, is not ground for reversing the judgment; the presumption being that the Court required the officer to be sworn, and the defendant to be present in Court, as the law requires. If there was any error in fact it is for the defendant to make it appear by a "case" or bill of exceptions. *Stephens vs. The People* ; *McKinley vs. The People*, 2 *Gilman*, 540; *Pate vs. The People*, 3 *Gilman*, 644.

As to the defendant's ninth point—that the jurors were irregularly summoned after the regular panel was exhausted,

it does not appear from the record or otherwise that there is any foundation, as a matter of fact, for the objection, and we therefore do not consider it.

Judgment affirmed.

BERRY, J.—I am of opinion that the law of 1868 allowing the State peremptory challenges is not an *ex post facto* law. But as to what is an *ex post facto* law, I see no reason for modifying the views heretofore expressed in *State vs. Johnson*, 12 *Minn.*, 496, and therefore I do not agree to all that is said on that subject in the foregoing opinion.