## THE PEOPLE EX REL. CHANDLER v. McDONALD.

CONSTITUTIONAL LAW—EX POST FACTO LAW—REPEAL OF STATUTE
   AUTHORIZING A CHANGE OF MAGISTRATE, ON PRELIMINARY
   EXAMINATIONS.

1. An ex post facto law is one which, in relation to the offense
   or its consequences, alters the situation of a party to his
   disadvantage.

2. It is within the power of the legislature to change the
   form and method of procedure in any manner which, in re-
   lation to the crime or its consequences, does not alter the
   situation of the accused to his disadvantage.

3. An act passed after the commission of a felony, is not an
   ex post facto law which repeals a statute authorizing an
   accused to object to an examining magistrate by affidavit
   made upon information and belief.

4. The repeal of the statutory provision which allowed an
   accused to secure a change of magistrate upon preliminary
   examination, did not deprive one committing a crime be-
   fore such repeal, of any substantial right or protection.

[Decided October 25, 1895.]

APPLICATION for writ of habeas corpus.

Isaac Chandler having been convicted of an assault and
battery with intent to kill and murder, and sentenced to im-
prisonment for the term of fourteen years, was in the peniten-
tiary, and in the custody of the warden thereof. Chandler
applied for the writ of habeas corpus to be directed to N. D.
McDonald, the warden of the State penitentiary. The case
was heard upon the petition for the writ. The facts are stated
in the opinion.

*Charles F. Tew,* for the petitioner.

The repeal of the law giving the accused the right to a
change of magistrate at a preliminary examination is ex post
facto as to Chandler, the crime which he is alleged to have
committed having been committed prior to such repeal. (7
Am. & Eng. Ency. Law, 526; Kring v. Mo., 107 U. S., 221;
Garvey v. People, 6 Colo., 559; U. S. v. Hall, 2 Wash., 366;

Calder v. Bull, 3 Dall., 386.)    A preliminary examination is
necessary before an information can be filed.    (Chap. 21, L.
1893.)    An examination or waiver thereof is required before
the district court can acquire jurisdiction.    (White v. State,
44 N. W., 443; People v. Chapman, 62 Mich., 280; People v.
Smith, 25 id., 497; State v. Sorenson, 84 Wis., 30; Martin
v. State, 79 Wis., 165; In re Wright, 3 Wyo., 487.)    A pre-
liminary examination is a judicial determination.    (Rev.
Stat., Secs. 3188, 3191, 3193, 3200, 3201; People v. Evans,
40 N. W., 473; Yaner v. People, 34 Mich., 286; Brown v.
People, 39 id., 37; People v. Thompson, 84 Cal., 598; State
v. Boulter, 39 Pac., 883.)    A preliminary examination serves
for a presentment by a grand jury, and is a substantial right.
(State v. Sorenson, 84 Wis., 27.)    In United States cases a
presentment by indictment is necessary, and without it a con-
viction is void.    (Ex parte Bain, 121 U. S., 1; ex parte Lange,
18 Wall., 183; ex parte Parks, 93 U. S., 18; ex parte Wilson,
114 id., 417.)    The right to secure a change of magistrate was
a substantial right.

*Benjamin F. Fowler*, attorney-general, in opposition to the
petition.

A law which operates as a mere change of criminal procedure, without affecting any substantial right of the accused,
is not ex post facto as applied to crimes committed before it
took effect.    (Cooley's Const. Lim., 329; State v. Manning,
14 Tex., 402; State v. Corson, 59 Me., 147; State v. Will-
iams, 2 Rich., 418; People v. Phelps, 5 Wend., 9; Rand v.
Com., 9 Gratt., 738; 7 Am. & Eng. Ency. L., 531; In re
Wright, 3 Wyo., 478; Com. v. Hall, 97 Mass., 570; Dowling v.
State, 13 Miss., 664; Gut v. State, 9 Wall., 35.) . .The repeal-
ing statute was not ex post facto.    No substantial right of
the accused was affected.    (Holt v. State, 2 Tex., 363; 1 Kent,
408; 3 Dallas, 386; 1 Blackf., 193; 6 Cranch, 138; State v.
Cooler, 30 S. C., 105; Com. v. Phillips, 11 Pick., 27; People
v. Mortimer, 46 Cal., 114; 13 Colo., 810; Marion v. State, 20
Neb., 233; Walston v. Com., 16 B. Mon., 16; Warren v. Com.,
37 Pa., 45.)

GROESBECK, CHIEF JUSTICE.

The petitioner for the writ of habeas corpus, Isaac Chandler, was convicted in the district court for Laramie County of the crime of assault and battery with the intent to kill and murder, and on the 7th day of June, A D. 1895, was sentenced to imprisonment in the penitentiary for the term of fourteen years. He applies for the writ of habeas corpus, alleging that his imprisonment is unlawful, because the justice of the peace before whom he was examined on said charge refused to grant him, upon his sworn application therefor alleging the prejudice of the magistrate, an examination before some other justice of the peace of the county wherein the offense was alleged to have been committed. The time fixed in the information or complaint before the justice of the peace when the offense was committed was January 3, 1895. At the time of the commission of the offense as alleged in the complaint, the statute, Section 3441 of the Revised Statutes of Wyoming, as amended by Chapter 17 of the Session Laws of 1890, provided among other things that if upon the return of the process or the appearance of the parties in any civil cause or proceeding "or upon any criminal examination" either party, his agent or attorney shall make affidavit that from prejudice, bias or other cause, he believes that the justice of the peace before whom the cause is pending will not decide impartially in the matter, the said justice shall transfer said suit and all papers appertaining thereto to some other justice of the peace of the same or adjoining precinct against whom no such objection has been raised, who may thereupon proceed to hear and determine the same in the same manner as it would have been lawful for the justice before whom the cause or proceeding was commenced to have done. This last mentioned act was repealed and Section 3441 of the Revised Statutes amended thereby, was re-enacted in such manner as to remove all reference to criminal proceedings or criminal examinations, by Chapter 84 of the Session Laws of 1895, which by its terms took immediate effect and which became a law upon the approval of the Governor, February 18, 1895, two days before the complaint was

made before the justice of the peace and before the preliminary examination of the petitioner.

. The petitioner at his preliminary examination, notwithstanding the repealing statute, filed his affidavit and motion, before the examining magistrate, the affidavit alleging that the "affiant has been reliably informed and verily believes that there exists in the mind of H. Glafcke (the magistrate) a prejudice against said defendant, such as would preclude said Glafcke from giving said defendant a fair and impartial hearing or examination," and further, "that said affiant has been informed and verily believes that there exists in the mind of L. E. Stone, a justice of the peace of Cheyenne precinct in Laramie County, Wyoming, and in the mind of one Charles Carlstrum of Pine Bluffs precinct in said county and State, and a justice of the peace within and for said precinct, a prejudice, such as would preclude both said L. E. Stone and said Carlstrum from giving said defendant a fair and impartial examination in said matter." The objection was therefore made to three justices of the peace of the county wherein the offense was alleged to be committed by this affidavit. The justice of the peace refused the application for change of venue, doubtless because of the passage of the repealing statute taking away the right of a defendant in a criminal cause or proceeding to a change of venue in a preliminary examination.

The attention of the district court was called to this matter by a plea in abatement before the trial and by a motion in arrest of judgment, both of which were overruled by the trial court.

The petitioner claims that the statute, Chap. 84, Sess. Laws 1895, in repealing or attempting to repeal, without a saving clause, the prior statute providing for a change of venue in a preliminary examination before a justice of the peace in criminal cases, is ex post facto and void as to him, as the offense with which he was charged was alleged to have been committed January 3, 1895, and that the act of February 18, 1895, could not deprive him of the right to object by affidavit to the justice of the peace before whom he was brought

to be examined on said charge, upon the grounds mentioned in the statute in force at the time of the alleged commission of the offense. He contends that notwithstanding the repeal of the statute providing for a change of venue in preliminary examinations, he was entitled to it, when he applied therefor under the law as it existed at the time of the commission of the offense alleged; that the jurisdiction of the justice as an examining tribunal or court of inquiry was defeated after the application for change of venue had been made; that the magistrate was without jurisdiction to proceed with the examination; that as the subsequent proceedings of the magistrate were void, the accused had no preliminary examination; and that therefore, as the statute then provided for such an examination in trials upon information of the prosecuting attorney and where the accused had not been indicted by a grand jury, the district court was without jurisdiction to try the defendant; and that all its proceedings resulting in the conviction and sentence of the petitioner are wholly void. The relator insists that he has been deprived of a substantial right by the repealing statute, that of the right to object to the examining magistrate upon the belief of the petitioner of his bias and prejudice, and to secure, by merely filing an affidavit stating such belief, a change of place of trial or in the personnel of the examining tribunal.

It is doubtful if the record discloses sufficient facts to enable us to determine whether or not the offense with which the petitioner is charged occurred prior to the passage of the statute of February 18th, which took away the right to a change of the place of the examination or in the examining magistrate. We do not have before us in this proceeding the record of the district court sufficient to show when the alleged offense was committed. The allegation in the information filed before the examining magistrate on the 20th of February, 1895, alleges that the offense occurred on the 3d day of January of that year, but this is not conclusive upon the prosecution, and under a familiar rule of criminal law, the prosecution may lay one day in the information and prove that the offense was committed upon any day prior

to the filing of the accusation. The offense may then have occurred for aught we know to the contrary, on the 19th or 20th day of February, 1895, and after the passage of the challenged act of the legislature became a law by the signature of the Governor, in which event, the contention of the petitioner would amount to nothing.

However, we have determined to decide this proceeding upon the question involved in the briefs of counsel, and to consider only the validity of the statute which it is claimed took away the right of the petitioner in the examining court to secure a change of magistrate or place of trial, and treating the date of the commisison of the offense to be prior to the enactment of the challenged statute.

There is no doubt that the statute as it originally stood was liable to great abuse, and it is no wonder that the legislature sought to repeal it. In the case at bar, the relator objected to three magistrates of the county, and it would seem that he could have objected to all but one and thus have chosen his magistrate, or for that matter to all of the magistrates in the county and thus have forced the prosecution to resort to a grand jury to secure an indictment, for as the act stood in its primitive simplicity, it provided that if the affidavit be filed that from prejudice, bias or other cause the defendant believes that the justice will not decide impartially in the matter, the proceeding shall be transferred to some other justice of the same or adjoining precinct "against whom no such objection has been raised." It will be seen, therefore, that the relator under the provisions of this statute was quite modest, as he objected to but three justices of the peace when he might have filed his affidavit against every one in the county, if he "believed" that they were all prejudiced against him.

It is asserted that the petitioner was deprived of a substantial right by the repealing statute, and that being so deprived of a substantial protection afforded to him by the law existing at the time of the commission of the offense, that of the right upon information and belief to object to one, three or any number of examining magistrates of the county,

including the one before whom he was brought for examination. Nothing appears in the record that the magistrate was biased or prejudiced against the accused, nothing but the bare allegation that the defendant believed that there existed in the mind of the magistrate a prejudice against the relator which would preclude the magistrate from giving the defendant a fair and impartial hearing and examination. It does not appear that the magistrate was prejudiced but merely that the defendant was reliably informed and verily believed such to be the case. An affidavit is classed as the lowest grade of proof known in courts of justice, and an affidavit upon information and belief may well be termed the lowest grade of the lowest grade of proof. A fair and impartial jury, as we must consider them to be, and a judge not objected to sat in the trial court wherein the defendant was convicted of the felony charged against him, and such must have been the atrocious nature of the felonious assault that was proven that the judge felt compelled to sentence the defendant to the full extent of the law. We are now asked to set aside the trial, and perhaps discharge the defendant from custody and all future punishment, because he has been deprived of the benefit of this statute. If his rights have been invaded, either as secured to him by constitutional or statutory law, this duty must be fearlessly done, but this must be clear to warrant the exercise of such a power.

The development of the law relating to the guaranty of the federal constitution that "no State shall pass an ex post facto law" is remarkable. It has sprung from definitions in decisions wherein such definitions are the clearest dicta, and it will be somewhat interesting to trace the federal decisions to the present time, and to ascertain what the views of the national tribunal of last resort have been and are, for the definition and classification of ex post facto laws. The rule established by that great tribunal should be followed, as the determination of what is or what is not an ex post facto law is necessarily under the guaranty of the federal constitution, a federal question, as well as a question arising under the provisions of our State constitution.

In the case of Calder v. Bull, 3 Dallas, 390, Mr. Justice Chase defined what he considered ex post facto laws, as follows: 1. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2. Every law that aggravates a crime, or makes it greater than it was, when committed. 3. Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime, when committed. 4. Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender. These views were not adopted by the majority of the court in that case, and were indeed mere dicta as the act of the legislature of the State of Connecticut, setting aside a decree of a court of probate and granting a new hearing before the same court with liberty of appeal, was held not to be an ex post facto law within the meaning of Section 10 of Article 1 of the constitution of the United States, as that article had reference only to crimes, and this was the main question decided. But the court really adopts this definition in Cummings v. Missouri, 4 Wallace, at page 325, where in the language of Mr. Justice Field, delivering the opinion of the majority, it is said: "By an ex post facto law is meant one which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed; or changes the rules of evidence by which less or different testimony is sufficient to convict than was then required." Mr. Justice Miller dissented in this case and in the case of Ex parte Garland following, 4 Wallace, 390, and says of the case of Calder v. Bull, supra: "The first case on the subject is that of Calder v. Bull, and it is the one in which the doctrine concerning ex post facto laws is most fully expounded." He further states that "the court" in that case, Calder v. Bull, divides all laws which come within the meaning of that clause into four classes, and then names the classifications made by Mr. Justice Chase, quoted fully supra. In the celebrated case of Kring v. Missouri, 107 U. S.,

228, in which the court apparently assumed, by a bare major-
ity, a new position, Mr. Justice Miller says of the definition
given by Mr. Justice Chase in Calder v. Bull: "But it is
not to be supposed that the opinion in that case undertook to
define, by way of exclusion, all the cases to which the
constitutional provision would be applicable." This learned
jurist adopts as supplementary to the views of Mr. Justice
Chase, the language of Mr. Justice Washington, in U. S. v.
Hall, 2 Wash., 366, that an ex post facto law is one "in
short, which, in relation to the crime or its consequences,
alters the situation of the party to his disadvantage," the
words herein quoted being italicized in the opinion of the
majority of the court, and 6 Cranch, 171, is cited as showing
that the case of U. S. v. Hall was affirmed, but the opinion
on affirmance makes no reference to ex post facto laws and
the case was disposed of on other grounds. The opinion
in the case in 6 Cranch, was delivered by Mr. Chief Justice
Marshall, and if the case had rested upon the invalidity of the
law, such a matter would hardly have escaped the attention of
that great jurist.

In the Kring case, the following language is used in the
majority opinion: "Can the law with regard to bail, to indict-
ments, to grand juries, to the trial jury, all be changed to
the disadvantage of the prisoner by State legislation after the
offense was committed, and such legislation not held to be ex
post facto because it relates to procedure, as it does accord-
ing to Mr. Bishop? And can any substantial right which
the law gave the defendant at the time to which his guilt
relates be taken away from him by ex post facto legislation,
because, in the use of a modern phrase, it is called a law of
procedure? We think it cannot." Upon these excerpts last
quoted have been built up many hopes of convicted crim-
inals, but we think this language is dictum, and it has so been
held by other State courts than this. Lybarger v. State, 2
Wash. St., 552; In re Wright, 3 Wyo., 478.

In the majority opinion in Ex parte Medley, 134 U. S., at
page 171, written by Justice Miller, the court goes further,
and defines an ex post facto law to be, among other things,

one "which alters the situation of the accused to his disadvantage," leaving out, evidently unintentionally, the important qualifying words used in almost every other case in the federal Supreme Court on this subject, "in relation to the crime and its consequences." We think that these cases have not been followed by the great tribunal in which they were rendered, and that what may be termed extreme terms used in them have not been crystallized into law. The cases where this sweeping language has been employed have been those where the punishment has been increased, either by restoring the death penalty, where the accused has once been acquitted of a capital offense, or where the punishment has been increased, or where some legislative act, in relation to the crime or its consequences has imposed a greater degree of punishment than that inflicted at the time it was committed. The definition of an ex post facto law has sprung from the dicta of jurists, adopted by the court, but however apt or exact as to the case under consideration, can hardly be said to have been accepted as legal definitions or axioms. A review of the cases in the federal Supreme Court will establish this fact. In the case of Hopt v. Utah, 110 U. S., 574, a law of the Territory of Utah was challenged as ex post facto, which repealed a statute providing that "persons against whom judgment has been rendered upon a conviction for felony, unless pardoned by the Governor, or such judgment has been reversed on appeal, shall not be witnesses," after the commission of the crime of one accused of murder, but the court held unanimously that the repealing act merely enlarged the class of persons who might be competent to testify, and was not ex post facto. · It was said that such statutory alterations "only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure," and the testimony of one who was convicted of the crime of murder was held to be rightfully admitted by the trial court against the defendant, although the law making such testimony incompetent was repealed,

after the offense was committed, leaving the statute in such shape as to make such testimony competent. The case of Holden v. Minnesota, 137 U. S., 483, is distinguished from Ex parte Medley, supra. But in a comparatively recent case, Cook v. United States, 138 U. S., 157-183, the court says: "It is said the construction we place upon the second section of article three makes it obnoxious to the ex post facto clause of the constitution. In support of this position reference is made to Kring v. Missouri, 107 U. S., 221, where it was declared that any statute passed after the commission of an offense which, in relation to that offense or its consequences, alters the situation of a party to his disadvantage, 'is an ex post facto law.' This principle has no application to the present case. The act of 1889 does not touch the offense nor change the punishment therefor. It only includes the place of the commission of the alleged offense within a particular judicial district, and subjects the accused to trial in that district rather than in the court of some other judicial district established by the government against whose laws the offense was committed. This does not alter the situation of the defendants in respect to their offense or its consequences. 'An ex post facto law,' this court said in Gut v. The State, 9 Wall., 35-38, 'does not involve in any of its definitions, a change of the place of trial of an alleged offense after its commission.' " See Duncan v. Missouri, 152 U. S., 377.

This resume of the authoritative federal decisions, however conflicting they may seem, or however unsatisfactory they may be in defining what is and what is not an ex post facto law, shows, we think, that the court has not established as law the broad definitions laid down in the Kring and Medley cases, but that the definition of Mr. Justice Washington, quoted in Kring v. Missouri, may be relied upon, that a law which, in relation to the offense or its consequences, alters the situation of a party to his disadvantage, is an ex post facto law, as this formula evidently comprehends and is the sum of all the definitions.

The State courts have strongly leaned to the position that

a mere change in procedure is not an ex post facto law, and to the doctrine that an act to be denounced as unconstitutional in this respect, must make punishable that which was not punishable at the time the act was committed, or which aggravates the punishment, or operates to the disadvantage of the accused, in relation to the crime or its punishment.

. Laws have been held constitutional which after the commission of an offense decrease the number of a jury in trials for misdemeanors, State v. Carter, 33 La. Ann., 1214; which provide that in all questions affecting the credibility of a witness, his general moral character may be given in evidence, Robinson v. State, 84 Ind., 452; which authorize the punishment of a person for an offense previously committed, and as to which all prosecution and punishment were barred at its passage, according to pre-existing statutes of limitation, State v. Moore, 42 N. J. L., 208; which reduces the number of peremptory challenges allowed the accused; Dowling v. State, 5 Sm. & M. (Miss.), 664; Mathis v. State, 31 Fla., 311; which changes the manner of summoning a jury; Perry v. Com., 3 Gratt., 602; which allows amendments to pending indictments, 14 Tex., 402; which prevents the defendant from taking advantage of variances in the indictment, Com. v. Hall, 97 Mass., 570; which gives the State seven peremptory challenges, State v. Ryan, 13 Minn., 370; Webster v. Com., 16 B. Mon. (Ky.), 16, 40; requiring the jury instead of the court to fix the punishment, Holt v. State, 2 Tex., 363; making the court instead of the jury, judges of the law, Marion v. State, 20 Neb., 236; changing the place of trial after the commission of the offense, State v. Gut, 13 Minn., 341; clothing justices of the peace with jurisdiction over crimes previously committed, State v. Welch, 65 Vt., 50; dividing a county into judicial districts, Potter v. State, 42 Ark., 29; repealing a law providing for preliminary examinations after indictment found, Jones v. Com., 86 Va., 661; changing method of prosecution from indictment to information by prosecuting attorney, People v. Campbell,

59 Cal., 243; Lybarger v. State, 2 Wash. St., 552; In re Wright, 3 Wyo., 478.

By our statute taking away the right of the accused to object by an affidavit made upon information or belief to the examining magistrate, after the commission of felony, the petitioner was not deprived of any substantial right or protection, as it is within the power of the legislature to change the form and method of procedure in any manner which in relation to the crime or its consequences, does not alter the situation of the accused to his disadvantage, and the situation of the prisoner was not so changed by the statute challenged by him. It can not be seriously contended that all who may have committed criminal offenses prior to the date of the statute repealing the law providing that the defendant may upon his own statement upon information and belief secure a change of place of trial, shall have the right for years to come as we have no statute of limitations relating to crimes or misdemeanors, to be considered as pardoned by the legislature or as entitled to the right under a repealed statute to object to the magistrate before whom they are brought upon complaint and warrant to answer a criminal charge of which the magistrate has not full jurisdiction to hear, try and determine. True in one case, the right of a change of venue in preliminary examinations is said to be a substantial and important right of which the accused can not be deprived except by his own act, State v. Sorenson, 84 Wis., 27, but this is a right given under a statute already existing. If the statute had been repealed, it is doubtful if the Wisconsin court would hold in face of all the authorities that the right to a change of place of trial, being a method of procedure in which no one has a vested right, can not be taken away by a statute after the commission of the offense. Cook v. U. S., 138 U. S., 183; Gut v. State, 9 Wall., 38; Hopt v. Utah, 110 U. S., 589.

The right to a change of place of trial, or a change of judge in case where the magistrate or judge is disqualified by prejudice, or where there can not be a fair trial owing to the prejudice in the community against the accused always

existed at common law, but the venue was never changed upon the mere opinion or belief of the party applying therefor, at common law, as the rule was that facts and circumstances must appear satisfying the court; 1 Bishop's New Crim. Pro., 70-71.

By no accepted definition of an ex post facto law is this statute which sweeps away the provision that the accused may secure a change of magistrate or place of preliminary examination in a criminal case, upon his affidavit of belief of the prejudice of the magistrate before whom he has been brought for such examination, an ex post facto law. It does not make criminal what before its enactment was innocent; it does not inflict greater punishment than was attached to the crime when committed; it does not alter the rules of evidence and direct that less or different testimony may be received than required at the time of the commission of the offense; and it does not alter in relation to the crime or its consequences, the situation of the accused to his disadvantage. If we go further and add other means invented in some of the cases for the detection of an ex post facto law, it does not deprive him of any substantial or vested right provided by law at the time of the guilty act for his protection. It is necessary in the administration of justice that one accused of crime should have a fair trial before an impartial and unprejudiced judge and jury, and even an examination on the initial or preliminary inquiry before an impartial and unprejudiced magistrate. Nowhere does the record show that the petitioner has been shorn of any of these substantial rights and privileges, for if the examining tribunal, the court of inquiry, was prejudiced against him, we have no knowledge of that fact from the record, and it is not even asserted that the allegations of the defendant upon information and belief made in his affidavit alleging such prejudice before the examining magistrate were true. It merely appears that he believes them to be true, and this is insufficient under the statute in force at the time that he was complained against at the preliminary examination. Endless confusion would result from a decision by us that the

legislature had no right to make new regulations as to methods of procedure in the courts of justice or to remove and repeal old rules that may be found to be a temptation to perjury or liable to abuse, and which in no way affect the right of the accused to a fair and impartial hearing, either in the examining or in the trial court.

The writ is disallowed and the petition for the writ is dismissed.

In accordance with the provisions of the habeas corpus act, the clerk of this court will return the petition for the writ to the petitioner or the person applying for the writ, with a certified copy of this opinion containing the reasons of this court for disallowing and refusing the writ.

*Writ of habeas corpus denied.*

CONAWAY and POTTER, JJ., concur.