## Jim Wright v. The State.

### No. 2962.   Decided January 28, 1914.

### Rehearing denied March 4, 1914.

**1.—Murder—Charge of Court—Exceptions.**

Where, upon trial of murder, September, 1913, alleged to have been committed on the 18th day of October, 1912, the defendant failed to file his exceptions to the charge of the court as prepared and submitted to him before it was read to the jury, he could not assail the same in his motion for new trial, and this, although the offense was committed prior to the passage of the law requiring that exceptions must be filed before the charge is read to the jury.

**2.—Same—Rule Stated—Article 743—Procedure—Remedy.**

Statutes pertaining to the remedy or course and form of procedure, but which do not destroy all remedy for the enforcement of the right are retrospective so as to apply to causes of actions subsisting at the date of their passage. The Legislature, at any time, may change the remedy or mode of procedure, etc.

**3.—Same—Right of Appeal—Statutes Construed—No Fundamental Error.**

Under the Constitution of the State of Texas, the right of appeal is given only under such conditions and restrictions as may be provided by law, and consequently, the restriction in article 743, Code Criminal Procedure, as amended, as to what questions this court shall review on appeal is valid and binding, and the charge of the court can not be reviewed unless complained of at the time of the trial, unless fundamental error is committed.

**4.—Same—Evidence—Rebuttal.**

Where defendant introduced testimony as to the previous relation between defendant and deceased and their families and which led him to believe that

his life was in danger, the State could show that these conditions did not exist and that the killing took place under the circumstances testified to by the State's witnesses.

### 5.—Same—Evidence—Self-serving Declarations.

Upon trial of murder, there was no error to exclude the self-serving declarations of defendant made a long time after he had left the scene of the homicide.

### 6.—Same—Evidence—Harmless Error.

Upon trial of murder, there was no error in admitting testimony that defendant, some time after the commission of the offense, requested the witness to get the two s——n-of-b——hs who arrested him before, in order that he might cut them down, it having been brought out by the defendant that he resisted arrest and refused to give up his gun on this occasion, etc.; this, if any error, was harmless.

### 7.—Same—Sufficiency of the Evidence.

Where, upon trial of murder and the conviction thereof, the evidence amply supported the conviction there was no error.

### 8.—Same—Charge of Court—Exceptions to Charge.

Where appellant complained that he was led to believe by the language of the court that. he was to be tried under the law and procedure in force at the time of the commission of the offense, but the record on appeal showed that when the testimony had been closed the court then prepared his charge and submitted it to counsel, who failed to file his written exceptions thereto and afterwards contended that he could raise these objections in a motion for new trial, this court can not review the matter on appeal, under article 743, Code Criminal Procedure, as amended, the defendant receiving the punishment formerly assessed for murder in the second degree, and there being no fundamental error.

Appeal from the District Court of Midland. Tried below before the Hon. S. J. Isaacks.

Appeal from a conviction of murder; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*Ross & Hubbard,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted of murder, and his punishment assessed at thirty years confinement in the State penitentiary.

The crime with which appellant was charged was alleged to have been committed on the 18th day of October, 1912. The trial was had in September, 1913. Appellant, in the record, admits that the court, before the argument was begun, furnished him with a copy of the charge, and he read it; and he further admits that he at that time took no exception to the charge as prepared and submitted to him, and which was subsequently read to the jury, but after the verdict, in his motion for a new trial he vigorously assails the charge of the court. His contention is, that as the offense with which he is charged was committed prior to

July 1st of last year, although tried subsequent to that date, the law regulating the trial of criminal cases as passed by the last Legislature (chapter 138) should not apply, and he could still complain of the charge of the court for the first time in his motion for a new trial. Mr. Black, in his work on "Interpretation of Laws," says: "No person has a vested right in any form to procedure. He has only the right of prosecution or defense in the manner prescribed for the time being, and if this mode of procedure is altered by statute, he has no other right than to proceed according to the altered mode. Indeed, the rule seems to be that statutes pertaining to the remedy or course and form of procedure, but which do not destroy all remedy for the enforcement of the right, are retrospective, so as to apply to causes of action subsisting at the date of their passage. Statutes which relate to the mode of procedure, and affect only the rights, are valid; and it is no objection to them that they are retrospective in their operation. It is competent for the Legislature at any time to change the remedy or mode of procedure for enforcing or protecting rights, provided such enactments do not impair the obligations of contracts, or disturb vested rights, and such remedial statutes take up proceedings in pending causes where they find them; and when the statute under which such proceedings were commenced is amended, the subsequent proceedings must be regulated by the amendatory act." Old article 743 read before amendment that the "error in the charge must be excepted to at the time of the trial, *or on motion for a new trial.*" In amending and re-enacting this provision of the Code, the words "or on motion for a new trial," were omitted from this article. So it is clear that the intent and purpose of the Legislature is that we should not reverse a case because of error in the charge, if error there be, unless it was excepted to at the time of the trial, and not then unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. By the Constitution of this State the right of appeal is given only under such conditions and restrictions as *may be required by law,* consequently this restriction as to what questions we shall review on appeal is valid and binding on us, and we have no authority to ignore it, nor construe it out of existence. If it is considered that the provisions are too restrictive, the remedy lies in an application to the Legislature to amend the article. We are powerless to give relief from its provisions so long as it is the law, consequently we are without authority to review the charge of the court unless complained of at the time of the trial, unless fundamental error is presented.

Mrs. Jim Wright, wife of appellant, testified in his behalf, that the relations between their family and the family of Mr. Steed (deceased), had been very unpleasant for two years; that Mrs. Steed some two weeks before the homicide had cursed appellant and called him a s——n of a b——h; that for some months they had hardly been on speaking terms; that a short time before the homicide she saw deceased cleaning his gun in the yard, and that Mrs. Steed had informed her that deceased

had his gun in the house loaded, and if Mr. Manahan ever turned the
hydrant off again, Mr. Steed would kill him; that she had informed
her husband about this conversation, and told him to be on his guard,
that she thought that deceased had cleaned his gun to kill him, appel-
lant.  Mrs. Steed testified denying all this, and said that prior to the
night of the killing in so far as she knew, the feeling between the two
families were friendly; denied that she had called appellant a s—n of a
b—h; denied that she had ever told Mrs. Wright that the gun was in
the house loaded, and if Mr. Manahan ever turned the water off again
her husband would kill him.  It will be noticed that Mrs. Wright said
it was on this circumstance that she warned her husband to be on his
guard, and that she believed 'deceased was cleaning it up to kill him,
appellant.

Mrs. J. T. Camp testified that she lived a close neighbor to appellant
and deceased; that she frequently saw Mrs. Wright and Mrs. Steed con-
versing; that the children visited, and that the relations between the
two families were friendly, or so seemed to her.  On cross-examination
she answered that there might have been friction between the two families
of which she was unaware.

Mr. Manahan was permitted to testify that he had never cut off the
hydrant at Mr. Steed's in his life.

This testimony was objected to by appellant, but we think it clearly
admissible.  The previous relations, as sworn to by Mrs. Wright and
other witnesses, were introduced by appellant as tending to show what,
in the light of what he says occurred at the time of the homicide, led
him to believe his life was in danger, and it was perfectly legitimate
for the State to show, if it could, that these conditions did not exist, and
the killing took place under the circumstances testified to by the State's
witnesses.

Appellant desired to prove by Joe Kraus what he, appellant, told
him after the homicide.  This was not told under circumstances to render
it res gestae of the transaction, and would have been but a self-serving
declaration made a long time after appellant had left the scene of the
homicide, consequently the court did not err in excluding this testimony.

By the only other bill in the record it is shown that T. Y. Morehead
was permitted to testify, over appellant's objection, that defendant some
time after the commission of the offense requested him "to get the two
sons-of-bitches who arrested him before, in order that he might cut them
down."  The connection in which this testimony was admitted is not
shown by the bill, nor can we ascertain by the statement of facts the
connection in which it was introduced, for no such testimony appears in
the statement of facts.  However, the bill of exceptions was approved
and this governs, and we 'conclude that the statement was testified to
by the witness.  The objection made by appellant was that such "state-
ment, if made was immaterial and irrelevant, and did not tend to
prove the commission by the defendant of the offense of which he is
charged, but did tend to inflame the minds of the jury against defendant

by indicating that defendant had himself theretofore been arrested for an offense which the State neither sought to prove nor described to the jury." Of course, it would be inadmissible to show that this defendant had committed any other and different offense not growing out of this transaction. But that defendant had theretofore been arrested is shown by the record by other witnesses and other testimony not objected to. Mr. Morehead was permitted to testify that appellant resisted arrest when he went to arrest him for this offense. Then on cross-examination appellant sought to prove by this witness that he gave as a reason for refusing to give up his gun, the way they had treated him before; that they had talked of lynching him before; that they had then threatened to lynch him, and had mistreated him. It is thus seen that the fact that appellant had been theretofore arrested was not communicated to the jury by the statement above objected to, but got before the jury by reason of his resisting arrest, and refusal to give up his gun on this occasion, and appellant's explanation, developed by his counsel, of his conduct and in seeking to explain it away. This is the only error complained of in a way we could review it, if error it be, and under the evidence adduced legitimately and without objection, it would not be such error as would call for or necessitate a reversal of the case.

The evidence would show that appellant and Mr. Steed were both carpenters residing at Pecos, in Reeves County. Only a short time before the homicide they had been at work together on houses erected in that town. Deceased is not shown to have had any animosity towards appellant other than by the testimony of appellant and his wife, who say that deceased became angry because appellant tore loose a playhouse made for his children, and which was fastened to a fence running between their houses, while on the other hand, by the testimony of witnesses it is shown that appellant had no kindly feeling toward Mr. Steed. All the testimony shows that Mr. Steed bore the reputation of a peaceable and law-abiding citizen. On the evening of the tragedy, according to the State's testimony, deceased went home, talked a while to his daughter, who then went to a moving picture show; his wife told him about a neighbor who wanted to sell a store, and he went to see it, purchasing the store. His wife, as soon as the girls left, took the baby girl and went to meet him, they returned home together. His wife says deceased was walking along, with the child in his arms, playing with it, when appellant called and says, "Steed, I have tore the G—d d—d playhouse down, and I do not want it put up there any more, and if he did put it up, he would shoot his G—d d—d head off"; that deceased replied, "What is the matter with you anyhow?" Appellant replied: "I mean what I say." That deceased then remarked, "Oh, it would be like another Mexican case," when appellant said, "G—d d—n your soul to hell, it is not a Mexican I am after this time; you are the man I want," and shot him. Deceased was in his shirt sleeves, and had no weapon. Appellant's version is that he met deceased late in the evening, and told him if he did not tear the playhouse and his fence from appellant's

fence, he, appellant, would do so, when deceased replied he would kill him if he did. That he, appellant, then went in and ate his supper. After eating his supper he decided to tear the playhouse and fence loose from his fence, and getting his gun, he called his son and they went out there and climbed the fence over in deceased's yard, and began to tear the playhouse and fence loose. That he heard the deceased coming home, when he and his son got back over the fence into his own yard, and when deceased came along he "told him he had torn that outfit down, and did not want it nailed back there," when deceased remarked, "Yes, and G—d d—n you, I will get my gun and fill you both full of lead," and started to the house. That he, appellant, did not think it would do to let him go on and get his gun, and he raised his Winchester and shot him.

The dying statement of deceased would show an unprovoked killing. Morehead says when he got there appellant remarked: "I guess you are after the man that done that shooting—I done it, and I am not a d—n bit sorry of it."

Thus it is seen that appellant's own testimony would not justify his conduct, nor reduce the offense below murder upon implied malice if indeed it does not show express malice.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### March 4, 1914.

HARPER, JUDGE.—This case was affirmed at a former day of this term, and appellant has filed a motion for rehearing, in which he states that the court erred "in subjecting appellant to a trial under a system of law and procedure not in force at the time of the alleged commission of the offense." Appellant contends "that the trial judge announced in open court before entering upon this trial, that defendant would be tried under the law and procedure in force at the time of the commission of the offense, unless the defendant should then and there file a written request that he be tried under the law and procedure in force at the time of announcement for trial," and for this reason he contends that he ought to be permitted to complain of the charge in the motion for a new trial, although he at the time it was submitted to him made no objections to the charge as given. Had the trial judge tried appellant under the old law and procedure, and not submitted the charge to appellant's counsel for criticism and objection, we certainly would allow him to object thereto in the motion for a new trial. But whatever the trial court may have announced before the trial, it is certainly made clear by this record that when the testimony was introduced and closed, the court then prepared his charge and submitted it to counsel as is provided in chapter 138 of the Acts of the Thirty-third Legislature. Appellant then knew the court was not proceeding under the old procedure, but under

the new, as adopted by the last Legislature, and if the charge was erroneous, or did not present the issues made by the testimony in such way as appellant desired, why did he not then object to the charge and suggest to the court such amendments to the charge as he thought necessary to protect the rights of his client? Of course, we would not permit one to be misled to his injury if we could prevent it, but the record in this case discloses that the court prepared his charge, submitted it to appellant's counsel, and no objection was made thereto, and no special charges requested. This case was tried on the 8th day of September of last year, and the Act of the Legislature had then been in force for some months, and in this law the Legislature has provided in article 735 that the judge, before argument begins, shall "prepare his charge in writing, and shall submit same to defendant's counsel, who shall have a reasonable time to examine same, and present his objections thereto in writing, distinctly specifying each ground of objection." Why is this required? It is that every right of defendant may be fully protected, and his theory of the case fully presented. It is not intended, nor will it deprive him of any right, but he hereafter must be timely in asserting his rights, and aid the court in securing a fair and impartial trial, and what else should one desire. It is further provided in article 737 that he shall also have a reasonable time, after reading the charge of the court, to present any objection or special charge he may desire to have given. If he asks none, and does not complain of the charge of the court as given, article 743 provides that the case shall not be reversed unless an error was committed calculated to injure the rights of the defendant, and not then unless the error was pointed out in objections made to the charge as given, or in refusal of special charges requested, made at the time of the trial. If it was claimed or asserted that the trial court did not allow reasonable time to examine the charge and specify the grounds of objection, we would review the charge as given, even though the objections were made after the trial. But this is the only instance in which we are authorized to review the charge where the objections were not made at the time of the trial, or unless it is made to appear that a person has not had a fair and impartial trial. The fact that this law took effect after the alleged commission of the offense does not alter the rule where the trial took place subsequent to the time the law became effective. This law is a mere matter of procedure and governs all trials had after its provisions went into effect. A person has no vested right of appeal to this court—this is given to him by the Constitution under such restrictions and regulations as may be prescribed by law, and in some instances a person is denied of any right to appeal to this court although convicted of a criminal offense. We have several times discussed this question recently, but appellant insists so earnestly that the Legislature can not change the rules of procedure in the trial of criminal cases theretofore pending, but not yet tried, we have again reviewed the authorities and text-books. In the case of Manning v. State, 14 Texas, 402, when the Supreme Court had juris-

diction in criminal matters, that court held that the Legislature had the authority to "change the mode of conducting proceedings upon the trial in reference to past as well as to future offenses"; that this would not be an ex post facto law,—it related solely to the remedy. This case has not only been followed in this State, but has been cited approvingly in Beebe v. Birkett, 108 Mich., 234; Sage v. State, 127 Ind., 15; State v. Moore, 42 N. J., 208; People v. McDonald, 42 Pac., 15. In Wharton's Criminal Law it is held: "A statute subsequent to an offense may change the mode by which it is to be prosecuted, provided the punishment attached to the offense is not thereby increased." (Sec. 43.) Mr. Cooley in his work on Constitutional Limitations says: "So far as mere matters of procedure are concerned, a party has no more right in a criminal than in a civil action to insist that his case shall be disposed of under the law in force when the act investigated is charged to have taken place. Remedies must always be under the control of the Legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice in existence when the facts arose." The trial court would have had no right to have ignored this statute, and had he done so, appellant would then have had real cause for complaint. Neither have we the right to ignore this law, as appellant would have us to do, for, while no appeal would lie from our action, we are but a creature of the law and are bound by the rules and regulations prescribed by the law of the State, and to do otherwise than obey the law as written would be a usurpation of power on our part. Appellant received the punishment formerly assessed for murder in the second degree, and his offense, if not justifiable, was murder in one of the degrees, under the evidence adduced on this trial. The issue of self-defense was submitted to the jury, and they find against this contention. Had some of the criticisms now leveled at the court's charge been made when the court submitted the charge to appellant's counsel, we are satisfied the court would have amplified the charge in some respects as appellant now contends should have been done, but they are not such matters as prevented appellant from receiving a fair and impartial trial. We do not think appellant's counsel noticed these matters at the time the charge was submitted to him before being read to the jury, for we think he is that character of man who would promptly have called the attention of the court to them; yet we have heard some lawyers say that they sat still, let the court take care of itself, in the hope they would catch the court in error that they might assign it in the motion for a new trial, in case a conviction was had. This was not fair to the trial court, and that day has passed in Texas under the recent statute. Lawyers, in fact, hereafter must consider themselves, whether lawyers for the State or defendant, as officers of the court, and lend to the court all the aid they can, to see that a fair and impartial legal trial is had. The Legislature has provided that the "practice of setting traps" for the court must cease, and we will administer the law as written. The objection to a charge must be made before

the charge is read to the jury, and if a reasonable time to do so is granted, objections will not be considered on appeal, made for the first time in motion for new trial. This is the command of the law and it we will obey.

The motion for rehearing is overruled.

*Overruled.*