Giíoesbeck, C. J.
This is a hearing upon the demurrer to the answer and return of A. D. Kelley, sheriff of Laramie county, to the petition for the writ of habeas corpus, and to the writ. It is admitted that the demurrer raises all the questions involved, and that the decision upon it will dispose of the entire case. The answer and return of the sheriff show that the petitioner, Leonard Wright, is restrained of his liberty by the said sheriff in the jail of said Laramie county, under a sentence of the district court of said county, for the term of two years and six months, under his plea of guilty of an assault with an attempt to commit rape. The defendant was informed against by the county and prosecuting attorney of said county for the crime of rape, under the provisions of the law passed by the first legislature of the state of Wyoming, approved January 10,1891, entitled “An act to change and *479 regulate the grand jury system by reducing the number of grand jurors, providing that a grand jury shall be summoned only when ordered by the court, and providing for the prosecution by information, and the procedure thereunder.” Sess. Raws Wyo. 1890-91, c. 59, p. 213. The offense is charged in the information as having occurred on the 16th day of December, A. D. 1890, nearly a month before the act took effect; and the counsel for the petitioner claim that the petitioner, notwithstanding his plea of guilty, should be proceeded against by indictment instead of by information, as, prior to the passage of the act above named, he could only have been accused by indictment. It is urged that the petitioner is held without due process of law, and that the law applying to the prosecution of offenses committed prior to its enactment is an ex post facto law, and in violation of section 35 of the declaration of rights, (Const. Wyo. art. 1,) which states that “no ex post facto law, nor any law impairing the obligation of contracts, shall ever be made. ” The constitutional authority for the enactment of the statute is found in said article, and reads as follows: “Sec. 9. The right .of trial by jury shall remain inviolate in criminal cases, but a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than twelve men, as may be prescribed by law. Hereafter a grand jury may consist of twelve men, any nine of whom concurring may find an indictment, but the legislature may change, regulate, or abolish the grand jury system.” “Sec. 13. Until otherwise provided by law, no person shall, for a felony, be proceeded against criminally, otherwise than by an indictment, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger.” The act providing for prosecutions by information, and under which the petitioner was accused, provides, among other things, that all crimes, misdemeanors, and offenses maybe prosecuted in the court having jurisdiction thereof, either by indictment, as “ hereinafter provided, ” or by information. It further provides that “no grand jury shall hereafter be summoned or required to attend at the sittings of any district court in this state, unless the same shall be ordered by a district court, or by the judge thereof, in the vacation or recess of said court, and the grand jury shall consist of twelve men, nine of whom must concur in the finding of an indictment. ” The act was undoubtedly intended to apply to prosecutions of all offenses committed prior to the passage of the act as well as to those committed thereafter. There is no repeal of existing laws, nor any saving clause providing that offenses committed prior to the passage of the act shall be inquired of, prosecuted, and punished under laws existing at the time of the passage of the act. It seems that the legislature had determined to dispense with grand juries after the act took effect, except when called by the court or judge thereof, following very closely the law of Michigan in this respect. The general right to substitute prosecutions by information in place of prosecutions by indictment is conceded, ini view of the constitutional provisions in this state, and it is not claimed that this infringes any right of a defendant. Indeed, this has been so frequently settled that it is unnecessary to cite any authorities, but we cite a few," which have come immediately under our observation. Hurtado v. People, 110 U. S. 516, 4 Sup. Ct. Rep. 111, 292; In re Lowrie, 8 Colo. 499, 9 Pac. Rep. 489; State v. Barnett, 3 Kan. 250; Rowan v. State, 30 Wis. 129. These cases dispose also of the question as to whether or not a proceeding by information is due process of law, and we do not consider it necessary to dwell longer on this point. We reach the vital question, which it is practically admitted is the only one before us, whether or not the petitioner has a right to complain now, after his plea of guilty has been entered, that he was not indicted by a grand jury. Notwithstanding the somewhat singular case presented to us, of a defendant, represented in every stage of the case by eminent-counsel, waiting until he has withdrawn his plea of not guilty, after he has interposed his plea of guilty, after he has had ample time to raise all objections to the validity of the proceedings, now asking this court to release him from imprisonment under what he claims is a void sentence, we shall proceed to determine the question whether or not the district court for Laramie county acquired jurisdiction of the case by the information filed therein, or whether the petitioner had a right to be indicted by the grand jury of said county.
The rules laid down for the determination of the question as to whether or not a law is ex post facto are found in the *481 case oí Calder v. Bull, 3 Dall. 386, and have been very generally adopted by the courts of this country. They define the following laws as ex post facto: (1) Every law that makes an action done before the passing of the law, and which was inno-eent when done, criminal, and punishes such action; (2) every law that aggravates a crime or makes it greater than when it was committed; (3) every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed; (4) every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender. Mr. .1 usticeChase, who delivered the opinion of the court, says: “But I do not consider any law ex post facto, within the prohibition, that mollifies the rigor of the criminal law ; but only those that create or aggravate the crime, or increase the punishment, or change the rules of evidence for the purpose of conviction.” Tested by these plain rules, there would be little difficulty in determining the question before us; but the courts have not contented themselves with this clear definition; and so it was held by Mr. Justice Washington, in his charge to the jury in a United States circuit court, that “an ex post facto law is one which in its operation makes that criminal which was not so at the time when the action was performed; or which increases the punishment; or, in short, which, in relation to the-offense or its consequences, afters the situation of a party to his disadvantage.” U. S. v. Hall, 2 Wash. C. c. 366. In the case of Kring v. Missouri, 107 U. S. 221, 2 Sup. Ct. Rep. 443, this last definition was quoted with the evident approval of the learned justice delivering the opinion of the supreme court of the United States in that case, with a statement that the case was carried to the supreme court and the judgment affirmed, as reported in 6Cranch,171; but a careful investigation of the opinion in the case last cited will show that the charge of Mr. Justice Washington was not considered, or even touched upon, in the opinion of the court. It will be seen that the familiar definition of Blackstonefound in his Commentaries (volume 1, p. 46) has been much enlarged by modern decisions. Blackstone thus defines the meaning of an “ex post facto law:” “When, after an acción, indifferent in itself, is committed, the legislature then, for the first time, declares it to have been a crime, and inflicts a punishment upon the person who has committed it.” Judge Cooley, in his work on Constitutional Limitations, (5th Ed., p. 329,) says: “But, so far as mere’ modes of procedure are concerned, a party has no more right in a criminal thajii in a civil action to insist that his case shall be disposed of under the law in force’ when the act to be investigated iscbarged to have taken place. Remedies must always be under the control of the legislature, and it would createendlessconfusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts in existence when its facts arose. The legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime. Statutes giving the-government additional challenges, and' others which authorized the amendment of indictments, have been sustained, and applied to past transactions, as doubtless would be any similar statute, calculated merely to improve the remedy, and in its operation working no injustice to the defendant, and depriving him of no substantial right.” This definition was accepted as most satisfactory in the case of Robinson v. State, 84 Ind. 452, where a statute, providing that, “in all questions 'affecting the credibility of a witness, his general moral character may be given in evidence,” was held not to be an ex post facto law. The court say: “The statute is general, and applies to the trial of' all criminal cases. It furnishes merely a rule'of practice applicable alike to trials for offenses committed before and after its passage. It does not come within the1 constitutional inhibition of an ex post facto law.” Vide Ex parte Bethurum, 66 Mo. 545. The celebrated case of Kring v. Missouri, supra, was a step further in the direction of enlarging the meaning- and definition of an ex post facto law. Kring had pleaded guilty to murder in the second degree, and his conviction of' this crime, under the law of Missouri in force at the time of the commission of the crime, was an acquittal of the crime of murder in the first degree. The constitution of Missouri had been changed after *483 the commission oí the crime in such manner as to abrogate this provision. The supreme court of the United States, by a bare majority of the justices, held this constitutional provision to be an ex post facto law, and that it could not apply to offenses committed prior to the taking-effect thereof. Counsel for the petitioner urge with great force the following language of Mr. Justice Miller, who delivered the opinion of the court, as a new definition of an ex post facto law: “Can the law with regard to bail, to indictments, to grand juries, to the trial jury, all be changed to the disadvantage of the prisoner by state legislation after the offense was committed, and such legislation not be held to be ex post facto because it relates to procedure, as it does, according to Mr. Bishop? And can any substantial right which the law gave the defendant, at the time to which his guilt relates,' be taken away from him by ex post facto legislation, because, in the use of a modern phrase, it is called a law of procedure? We think it cannot.” The learned justice who delivered this opinion did not seem to be satisfied with the definition, as he restates the definition in the Case of Medley, 134 U. S. 160, 10 Sup. Ct. Rep. 384, as follows: “The term ‘ex post facto law,’ as found in the provision of the constitution of the United States, to-wit,that ‘no state shall pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts,’ has been held to apply to criminal laws alone, and has been often the subject of construction in this court. Without making extracts from these decisions, it may be said that any law which was passed after the commission of the offense for which the party is being tried is an ex post facto law when it inflicts a greater punishment than the law annexed to the crime at the time it was committed, (Calder v. Bull, 3 Dali. 386, 390; Bring v. Missouri, 107 U. S. 221, 2 Sup. Ct. Bep. 443; Fletcher v. Peck, 6 Cranch, 87,) or which alters the situation of the accused to his disadvantage; and that no one can be criminally punished in this country, except according to a law prescribed for his government by the sovereign authority before the imputed offense was committed, or by some law passed afterwards, by which the punishment is not increased. ”
This is á material change in the definition given in the case of Bring v. Missouri, and it now remains to be seen whether or not the situation of the accused has been altered to his disadvantage. We do not see that it has. How does the change in the accusing tribunal take away any substantial rights of the accused? He admits himself, by his solemn plea of guilty, to be rightfully accused of a grade of the offense with which he is charged, and this presumably by the advice of his counsel, after due time has been given to him to plead, a.nd after he has deliberately withdrawn his plea of not guilty. Should he now be heard to complain that a grand jury of 16 men, as required by the law in force at the time of the commission of the offense, might not have indicted him? He admits his guilt, and after conviction and sentence says that he was not properly accused. This is a travesty upon justice, and illustrates the absurdity 'of the proposition laid down by some of the courts. It has, however, been recently held by the supreme court of Montaña, in the case of State v. Ah Jim, 23 Pac. Bep. 76,[1] that the constitutional provision there reducing the number of grand jurors from 16 to7,6 of whom must concur in the finding of an indictment, is self-executing; and the court quotes with approval the following cases to show that such provisions apply to offenses committed before the passage of a law, and are not ex post facto in their nature or effect: Cooley, Const. Lim. 272, 831, 332; People v. Mortimer, 46 Cal. 114; Bish. St. Crimes, §§ 178, 180. In the California case (People v. Mortimer, supra) it was held that “it is notan uncommon practice to change the number of grand jurors required to investigate criminal charges, but we have never heard the right of the legislature to make such changes questioned; neither has it ever been claimed that the charge must be investigated by the precise number of grand jurors of which that body was composed at the time the act was committed;” and the Missouri case was noticed in this opinion of the Montana court. So, then, it was held that the reduction in the number of the accusing body did not invade any substantial right of the defendant. If the broad definition of Mr. Justice Miller in the Bring Case, apparently modified in the Case of Medley, supra, was followed, it would seem that such a change in the number of the grand jury might be the loss of a substantial right to the accused. *485 It the defendant has an unalterable right to be accused by indictment, it would seem that he has a right to be presented by 12 men out of 16, if such law existed at the time of the commission of the offense; and that if a' reduction in the number of the grand jury is not a change in his substantial rights, to his disadvantage, the abolition of the accusing body itself would not be. He has been presented by a sworn officer, and, under our Jaw, an official under bond, and the information must have been sworn to, as the law requires it. It was held in the case of Marion v. State, 20 Neb. 233, 29 N. W. Rep. 911, that although a law in force at the time of the commission of an offense (murder) provided that juries should be the judges of the law, and was repealed before the trial, it was competent to malte the judge, instead of the jury, judge of the law of the ease, as the legislature could make such a change, and that such a law was not ex post facto. The court adhered to its definition of an “ ex post facto law ” madein the case of Marion v. State, 16 Neb. 349, 20 N. W. Rep. 289, which is nearly in line with the definitions given heretofore, and says: “The procedure only has been changed. The degree of punishment, the character of the offense, and the rules of evidence remain as under the former law. It may be observed that the only change in the law is to provide another tribunal to pass upon the law of the case. Prior to the change, if tho words in the former Code are to be taken at their full meaning and import, the jury were the judges as to. the law of the case on trial. After the change, the court sits in that capacity, and is the judge of the law. No vested right of the plaintiff in error is affected. A new tribunal may be erected, or a new jurisdiction given to try him, and no right is abridged.” Com. v. Phillips, 11 Pick. 28. Now, certainly, here was a change in the powers of the trial jury. They were stripped of the right to actas judges of the law, and the court was clothed with that power, and yet this was held to be no infraction of the rights of thedefendant. In the case of People v. Tisdale, 57 Cal. 104. a ¿ase upon which the counsel for the petitioner greatly rely, and which they state to be the only case directly in point, found after the utmost diligence, the court said: “The real and only question is whether an information presented after the repeal of a law, which required that a person who violated it should be proceeded against by indictment, can be sustained for an offense committed before the repeal. ” That court held that the law was not intended to be retrospective, like ours. It also held thatacqnstitutional guaranty such as existed at the time the respondents were charged with the violation of a statute could not be taken away by any actof thelegislature. This seemsto be the view taken by the supreme court of Washington, in the case of McCarty v. State, 25 Pac. Rep. 299.[1] In this case the offense occurred before the admission of the state into the Union, and the court there held that the guaranty of the constitution of the United States was in force at the time of the commission of the offense, and could not betaken away, and that the defendant was entitled to be presented by a grand jury. This was held evidently with much hesitation, as the court announces on the petition for a rehearing that in view of the public importance of the question, and in view of the fact that the case was submitted without oral argument on the part of the state, it would not be bound by the opinion rendered on the constitutional questions involved. The situation of the petitioner here is different. The constitution of Wyoming was in force five months before the offense was committed, and the only constitutional guaranty which was given to the defendant, except as to the passage of a,n ex post facto law, was that, “until otherwise provided by law, no person shall for a felony be proceeded against criminally, otherwise than by indictment, except,’’etc. It has been otherwise provided by law, and the defendant has not been deprived of any constitutional guaranty. The framers of our constitution did not mean to follow the language of the federal constitution that “no person shall be held to answer for a capital or otherwise infamous crime, unless on presentment or indictment of a grand jury, except in cases arisingin the land or naval forces, or in the militia, when in actual service in time of public danger.” The intention appears plainly in our constitution that there should be no constitutional guaranty of a presentment or indictment of a grand jury, and that nothing should impede the right of the legislature to change, regulate, or abolish the grand-jury system.
We cannot refrain from alluding to one *487 provision of the law before us. It is provided in Kansas and in Michigan, by statute, that no information shall be filed until a preliminary examination has been had, unless such examination be waived, except in cases of fugitives from justice. This safe rule was enlarged so that a prosecuting attorney may file an information when he is satisfied that a crime has been committed. This is a dangerous power to lodge in the hands of a prosecuting officer, for he may keep a prisoner, unable to give bail, in durance, without a preliminary examination, until the next term of court, which may be months ahead. The law makes provision for preliminary examinations, and the accused ought to have this hearing, or an opportunity for it, where he can introduce witnesses in his behalf, — a privilege not accorded to him before a grand jury, one of the strong arguments for dispensing with that ex parte tribunal. We do not now intimate how we would decide this matter if properly before us, but we deem it proper to call attention to it, so that under the new practice there may be no excuse for following a dangerous method of procedure. We are forcibly impressed with one fact that crops out in the examination of this question. In the states of Michigan, Kansas, and Wisconsin, the ordinary method of accusation in criminal •cases is by information, and has been for .years. In Kansas and Michigan, and probably in Wisconsin, no provision was made as to offenses committed prior to the passage of the law providing for prosecutions by means of information, and yet not a single case has been found where the question raised here has been presented to the court of last resort in any of these states, although such ■cases must have arisen. It is n strong presumption that such prosecutions as to past offenses were- universally conceded to be legal, although the constitutions of these states surely contain the familiar provision that “no ex post facto law shall ever be passed.” Even if such a clause does not appear there, it is in the federal constitution, and this is as much an inhibition upon the legislature of the states as if it had been incorporated in the state constitution. Ex parte Beth-urum, 66 Mo. 545. We do not favor the practice of looking into the constitutionality of a statute in habeas corpus proceedings. In the states of Michigan, Missouri, Nebraska, Texas, and Iowa, in ba-beas corpus, the courts will not look beyond the judgment and re-examine the charges on which it was rendered, or pronounce the judgment an absolute nullity, on the ground that the constitutionality of the statute under which the conviction took place, or upon which the indictment was based, is controverted. That question, it is said, must be tested on appeal, writ of error, or trial in the appropriate court. Church, Hab. Corp, § 370, and the cases there cited. But the supreme court of the United States in Ex parte Siebold, 100 U. S. 371, has established a different doctrine ; and this seems now to be the rule in babeas corpus, as the learned author of the work above cited states: “But we apprehend the true rule to be that when a prisoner alleges that the law under which he was convicted and sentenced is unconstitutional, or has been repealed before the trial and judgment, he may have these matters passed upon by the highest judicial tribunals, whether the attack upon the judgment be collateral, as by habeas corpus, or direct, as by appeal or writ of error.” Church, Hab. Corp. § 370. We do not see that the law of thi? state providing for prosecutions by information is ex post facto in its nature, nor that it has infringed any of the substantial rights of the petitioner, nor that he has lost any constitutional guaranty ; and, entertaining these views, the demurrer to the answer and to the return of the sheriff must be overruled, and the petitioner remanded to the custody of the sheriff of Laramie county.
Conaway and Merrell, JJ., concur.

 9 Mont. 167.

 1 Wash. St. 377.