Ronald V. EATON

v.

STATE of Maine.

Supreme Judicial Court of Maine.

April 3, 1973.

Archer & Downing, by Wesley C. Archer, David R. Downing, Brewer, for plaintiff.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WERNICK, and ARCHIBALD, JJ.

ARCHIBALD, Justice.

This is an appeal by Ronald V. Eaton from the denial of his request for a writ of habeas corpus seeking post-conviction relief pursuant to 14 M.R.S.A. § 5508.

It is necessary to summarize the facts in order to bring the issues into proper focus.

On Friday, April 10, 1970, Eaton, a parolee under a sentence to the Maine State Prison, was arrested without a warrant, charged with being found intoxicated on a public street in Belfast, and incarcerated in the Waldo County Jail. A complaint in proper form was issued the following Monday, April 13.

On Saturday, April 11, Byron R. Heath, the Probation-Parole Officer, issued a formal signed request to the Sheriff of Waldo County to hold Eaton in custody as a parole violator. The following day (Sunday) Eaton escaped from the Waldo County Jail, but shortly thereafter he was apprehended and returned.

On Monday, April 13, a warrant was issued against Eaton for a violation of 17 M.R.S.A. § 2103 (breaking, entering and larceny), and the next day a two-count complaint was issued charging him with a violation of 17 M.R.S.A. § 1405 (escape from jail). On April 14, 1970, the record indicates that Eaton was before the District Court on the three complaints then outstanding, namely, for intoxication, escape, and breaking, entering and larceny. The District Court Judge took no action on these matters except as to the complaint for intoxication, to which Eaton pleaded guilty. However, that case was continued for sentencing, and the hearings on the two pending felony complaints were adjourned, all until April 17, 1970.

On April 16, 1970, Eaton, being then represented by Court appointed Counsel, appeared before a Justice of the Superior Court and filed a petition to waive indictment and proceed by information on the charge of escape from jail. M.R.Crim.P.,

Rule 7(b). This petition was approved by the Justice presiding and the County Attorney immediately filed a two-count information[1] to which Eaton entered a guilty plea. The plea was accepted (M.R. Crim.P., Rule 11), and he was sentenced to serve not less than two years nor more than five years in the Maine State Prison.

The appellant asserts several grounds to support his claim for relief, none of which are meritorious. In arguing his position he takes a two-pronged stance, namely:

(A) Neither count in the information charging escape is valid and, therefore, the Superior Court was without jurisdiction to act thereon; and alternatively,

(B) the appellant's plea of guilty was ineffective to support the ensuing judgment and sentence.

A

■ Initially, it is the appellant's contention that Count 1 contains no valid allegation of lawful detention. 17 M.R.S.A. § 2001 (Intoxication),[2] he argues, allows a

peace officer to consummate an arrest without a warrant only when an intoxicated person is found who conjoins his state of public intoxication with a disturbance of the peace. As stated in appellant's brief, "it would appear that the authority to arrest or to take into custody, as the statute is worded, makes the statute unconstitutional as containing within it an unreconcilable conflicts [sic]."

We see no merit in this position. It is clear to us that the language of the statute allowing the arrest of "[a]ny such intoxicated person" refers not only to those who are found "disturbing the peace" but also to those found intoxicated in "any street, highway or other public place." Certainly, the Legislature could not have intended that a police officer without a warrant for arrest would be powerless to protect society from the "evil of drunkenness in public" (*see* State v. Lawrence, 146 Me. 360, 362, 82 A.2d 90, 92 (1951)) or, in fact, to protect the unfortunate victim of alcoholic overindulgence from his own infirmity.

In 1971 the Legislature recognized the pre-existing statutory power to arrest under either situation by adopting an amend-

1. "COUNT #1 That on or about the Twelfth day of April, 1970 . . . the above named defendant Ronald V. Eaton . . . was being lawfully detained in the Waldo County Jail pursuant to his having been arrested for intoxication on April 10, 1970 . . . said arrest having been made under the authority of Section 2001 of Title 17 . . . whereupon he the said Ronald V. Eaton . . . did then and there wilfully, unlawfully and feloniously, from and out of said jail escape and go at large.
"COUNT #2 That on or about the Twelfth day of April 1970 . . . the above named defendant, Ronald V. Eaton . . . was being lawfully detained in the Waldo County Jail in pursuance of a lawful written order, dated April 11, 1970, by Byron R. Heath, in his capacity as a Probation-Parole Officer of the State of Maine, for violation of the conditions of his parole from the Maine State Prison . . . said order being within the authority of the said Probation-Parole Officer under Section 1632 of Title 34 . . . whereupon, he the

said Ronald V. Eaton . . . did then and there wilfully, unlawfully and feloniously from and out of said jail, escape and go at large."

2. "§ 2001. Public intoxication and disturbance
Whoever is found intoxicated in any street, highway or other public place . . . shall be punished for the first offense . . . . Whoever is found intoxicated in his own house or in any other building or place, disturbing the peace of his own or any other family or the public peace, shall be punished for the first and any subsequent conviction as provided in the preceding sentence. Any such intoxicated person shall be taken into custody by any sheriff, deputy sheriff, liquor inspector, constable, marshal, police officer or watchman and committed to the watch-house or police station or restrained in some other suitable place, until a complaint can be made and a warrant issued against him, upon which he may be arrested and tried."

ment to Section 2001 which allowed an accused to be released, after being taken into custody, if it appeared he was "not a danger to himself [typical of one simply found intoxicated in a street] or others [typical of one found disturbing the public peace while intoxicated]." Public Laws of 1971, ch. 460.[3] Since Section 2001 authorizes an arrest under either circumstance, Count 1 does allege a lawful detention.

■ With reference to Count 2, appellant again asserts a failure to allege lawful detention because the authority of a probation-parole officer to arrest a *parolee* is found in 34 M.R.S.A. § 1675[4] and not in 34 M.R.S.A. § 1632, which deals only with individuals in custody under a court order placing them on *probation*. However, even though the statutory reference was incorrect, it had no bearing on the substantive offense charged since by deleting it completely the information would have met the pleading requirements of the criminal rules. The incorrect statutory reference was surplusage. State v. Mihill, 299 A.2d 557 (Me.1973).

■ Additionally, M.R.Crim.P., Rule 7 (c) contains this language:

"Error in the citation of a statute or its omission shall not be grounds for the dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."

The record indicates that the Justice presiding at the time of the arraignment noted this error and called it to the attention of the appellant and his counsel. Following a conference with the appellant, his counsel

made the statement: "He has no objection to proceeding as it is, your Honor." It is clear that the erroneous statutory citation "did not mislead the defendant to his prejudice." See State v. Bryce, 243 A.2d 726, 732 (Me.1968).

Finally, the jurisdiction of the Superior Court is challenged because the appellant had not been given a preliminary hearing in the District Court to determine "[whether] there is probable cause to believe that an offense has been committed and that the defendant has committed it." M.R.Crim.P., Rule 5(c).

We understand the appellant's position to be that the Superior Court never can obtain original jurisdiction of felony proceedings by waiver of indictment unless a preliminary or "bind over" proceeding has been had in the District Court.

It is undoubtedly true that between December 1, 1965, and September 23, 1971,[5] many criminal actions were originated in the Superior Court by the waiver of indictment process under Rule 7(b) without a preliminary hearing in the District Court. This is the first occasion we have had to consider the validity of such a proceeding.

On the date of the information here in issue, 15 M.R.S.A. § 701 provided:

"No person shall be held to answer in any court for an alleged offense, unless on an indictment found by a grand jury, except for contempt of court and in the following cases:

1. Information. When prosecutions by information are expressly authorized by statute

---

3. "Within 18 hours after an accused is taken into custody, if it appears to the arresting officer that the accused is not a danger to himself or others, with the written consent of the accused, the accused may be released from custody and no complaint shall issue."

4. "A probation-parole officer has authority to arrest and charge a parolee with violation of parole and take him into his cus-

tody in any place he may be found, to detain the parolee in any jail, pending the issuance of a parole violation warrant, which detention shall not extend beyond the next business day of the office of the director."

5. The interval between the promulgation of the Rules of Criminal Procedure and the amendment of Subsection 1 of 15 M.R.S.A. § 701.

2. . . . [excluding misdemeanors, juvenile offenses and courts martial]."

This statute has been a part of Maine law governing criminal process since 1840. R.S.1840, ch. 169. The identical language of Subsection 1 was retained from 1840 until the statute was amended in 1971 (P. L.1971, ch. 544, § 49) by striking out the word "statute" and substituting therefor "rule of court."

In 1955 the Legislature enacted 15 M.R. S.A. § 811 (P.L.1955, ch. 187), delineating the method by which an accused felon could waive indictment by a grand jury and proceed in the Superior Court on an information filed by a prosecutor. Section 811 premised the right to so proceed on the accused being "bound over to await the action[s] of a grand jury." However, this section was repealed, effective December 1, 1965, by P.L.1965, ch. 356, § 32 and, simultaneously therewith the Maine Rules of Criminal Procedure became operative in which Rule 7(b) spelled out the procedures necessary to waive indictment. Rule 7(b) does not require, as did Section 811, that there be a "bind over" order from a District Court, simply stating, "[a]ny offense except one punishable by life imprisonment, may be prosecuted by information . . . ." [6]

The issue emerging from this history becomes: Did the 1965 repeal of 15 M.R.S. A. § 811 and the retention (until 1971) of Subsection 1 of 15 M.R.S.A. § 701 deprive the Superior Court of jurisdiction over the 1970 information before us because no *statute* existed authorizing proceedings by information? We answer in the negative for the basic reason that the 1965 promulgation of the Maine Rules of Criminal

Procedure was effective as an amendment of Subsection 1, removing any conflict between it and Rule 7(b).

4 M.R.S.A. § 9 grants the Supreme Judicial Court "the power and authority to prescribe, repeal, add to, amend or modify rules of [criminal] pleading, practice and procedure with respect to any and all [criminal] proceedings through final judgment," and this enabling statute further provides that "[a]fter the effective date of such rules as promulgated . . . *all laws in conflict therewith shall be of no further force or effect.*" (Emphasis supplied.)

■ Conceding that 4 M.R.S.A. § 9 does not give the Supreme Judicial Court authority to exercise its rule making power to repeal, or amend, the substantive law (20 Am.Jur.2d, Courts § 84), there can be no doubt of its power to override any procedural statutes that might be in conflict with the rules when promulgated.

■ An indictment or information is obviously a criminal pleading and the process by which the pleading comes into existence is clearly a criminal procedure. *See* In Re Wright, 3 Wyo. 478, 27 P. 565 (1891). Since Subsection 1 did not prevent a grand jury from returning an indictment and since neither Section 811 nor Rule 7(b) deprives an accused of the *right* to grand jury proceedings, unless voluntarily and knowingly waived, we do not hesitate to classify the statute as procedural. While the right to have a grand jury determine whether an indictment should be returned is undoubtedly a matter of substantive law, this substantive right may be waived. *See* Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041

---

6. Rule 7(b) suggests the necessity of an outstanding complaint, or that an accused be "bound over," only in those instances where a prosecutor may elect to charge "any lesser offense which is contained in the greater offense intended to be charged in the complaint," or when he elects to charge "another offense . . . not alleged in the complaint upon which such defendant has been bound over." Neither situation is factually before us, and whether the issuance of a complaint, or that there be a "bind over" hearing, is then mandatory we do not here decide, nor do we intimate what our decision would be in either case.

(1959). It is only when this has been effectively accomplished that the information procedure becomes operative.

Additionally, the Legislature has expressly recognized the authority of the Supreme Judicial Court, under its rule making power, to conform procedural statutes to the criminal rules and has done so specifically with reference to the statute here under consideration. The 1971 amendment of 15 M.R.S.A. § 701(1) (P.L.1971, ch. 544, § 49) was part of an omnibus bill containing one hundred fifty-two sections and was entitled, "AN ACT to Correct Errors and Inconsistencies in the Public Laws." Knowing, as we do, that Section 811 was repealed in 1965 to coincide with the promulgation of the criminal rules, it is apparent that legislative oversight is responsible for the failure to adopt this amendment in 1965 coincident with the repeal of Section 811.[7]

■ The Legislature recognized the inherent power of the Supreme Judicial Court to adopt rules dealing with criminal procedure and, in so doing, expressly stated that "all laws in conflict therewith shall be of no further force or effect." The rules when promulgated then have the force of a statute. Rattley v. Irelan, 90 U.S.App.D.C. 343, 197 F.2d 585 (1952). Since such rules have statutory effect, we see no reason to distinguish between the situation where the Legislature itself adopts inconsistent legislation and where properly promulgated rules conflict with existing procedural statutes. Depending on legislative intent, one of the conflicting laws will fall. Fuller v. State, 282 A.2d

848 (Me.1971); State v. Taplin, 247 A.2d 919 (Me.1968); State v. Bryce, 243 A.2d 726 (Me.1968); State v. London, 156 Me. 123, 162 A.2d 150 (1960). Otherwise stated, the promulgation of Rule 7(b) was repugnant to, and inconsistent with, the retention of the word "statute" in Section 701(1). *See* Opinion of the Justices, 120 Me. 566, 569, 114 A. 865, 866 (1921). Recognizing obvious legislative intent, we conclude that this word had "no further force or effect" subsequent to December 1, 1965, and construe Section 701(1) as though it thereafter read, "when prosecutions by information are expressly authorized by 'rule of court.' "

■ It is obvious that a person accused of a felony has a right to have his case ultimately presented to the grand jury following the preliminary hearing in the District Court, *if* he elects to exercise this right. It is equally clear that the "bind over" process is not the exclusive means by which the Superior Court may obtain jurisdiction of those accused of the commission of a felony.

■ The basic constitutionality of the original statute allowing a criminal defendant accused of a felony to proceed by information was sustained in Tuttle v. State, 158 Me. 150, 180 A.2d 608 (1962). Mr. Justice Sullivan, speaking for the Court in *Tuttle*, upheld the statutory procedure in this language:

"It is difficult to conceive how the Legislature could have expressed a more meticulous consultation of the rights of liberty inhering in man and a more ap-

---

7. A complete reading of P.L.1965, ch. 356, makes this conclusion even more apparent. Chapter 356 was captioned "AN ACT Affecting Certain Statutes Pertaining to Court Process and Procedure in Criminal Cases and to Kindred Matters," contained sixty-nine sections, each one of which was either the outright repeal, or an amendment, of a procedural statute, all aimed at removing conflicts with the criminal rules. The concluding section was in this language:

"Sec. 69. Effective date. This Act shall become effective December 1, 1965. It shall apply to all criminal proceedings commenced after December 1, 1965, and also to all criminal proceedings then pending, except to the extent that in the opinion of the court the application of this Act in a particular proceeding pending on December 1, 1965, would not be feasible or work an injustice in which event the laws in effect prior to December 1, 1965 will prevail."

preciative recognition of and deference to, their dignity and validity than it has set forth in the waiver of indictment act. By that statute a criminal respondent is deprived of no right."

*Id.* at 154, 180 A.2d at 610.

■ Since the United States Supreme Court has found no constitutional infirmity in Rule 7 of the Federal Rules of Criminal Procedure (upon which our Rule 7 was modeled), we do not hesitate to affirm the validity of Rule 7(b), adopting the rationale of *Tuttle. See* Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959).

### B

Was the appellant's plea of guilty ineffective to support the ensuing judgment and sentence?

The appellant advances the argument that his guilty plea could not be considered as a voluntary and knowing act because, when he entered his plea, he did not know that when he escaped he was not being validly detained in that:

(1) He had been denied bail.

(2) He had been unreasonably refused counsel.

(3) No arrest warrants had been obtained "as soon as practicably possible."

(4) His detention was the result of an unconstitutional arrest for intoxication.

■■ A careful review of the record, both before the Superior Court Justice who accepted the guilty plea and the Justice assigned to the post conviction hearing, fails to support any of these allegations. In any event, appellant cannot test the lawfulness of his detention by escaping from jail. State v. Perkins, 277 A.2d 501 (Me.1971); Hamner v. State, 223 A.2d 532 (Me.1966). Furthermore, the law is established that a *mere claim* of the unconstitutionality of a statute under which a person is confined cannot justify an escape. Kelley v. Meyers, 124 Or. 322, 263 P. 903 (1928); Annot., 70 A.L.R.2d 1452, § 12; 27 Am. Jur.2d Escape § 11.

Finally, appellant urges that his plea was neither voluntarily nor knowingly made because it was based on improper and inadequate advice given him by his Court appointed counsel. The Justice below dealt with this issue in this language:

"Petitioner's claim that the counsel who represented him at time of arraignment on the information—although competent—gave Petitioner inadequate representation is based on the theory that the attorney failed to recognize the errors in arrest and procedure which I have discussed. I find no errors of which Petitioner's counsel could have taken advantage to Petitioner's benefit and that the attorney's representation was adequate."

We agree.

The entry is:

Appeal denied.

WEATHERBEE and POMEROY, JJ., did not sit.

All Justices concurring.