Clifford A. LEWIS, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 84–124.

Supreme Court of Wyoming.

Dec. 2, 1985.

Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, Cheyenne, and Vincent P. Foley, Student Intern, Wyoming Defender Aid Program, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Sr. Asst. Atty. Gen., and Patrick J. Crank, Legal Intern, for appellee.

Before THOMAS,* C.J., ROONEY,** BROWN and CARDINE, JJ., and HARTMAN,*** District Judge.

ROONEY,[1] Justice.

Appellant was charged with the crimes of aggravated burglary, in violation of § 6–7–201(a)(i) and (b)(ii), W.S.1977 [2], and first degree arson, in violation of § 6–7–101, W.S.1977 [3]. He pled not guilty by reason of mental illness or deficiency. After a jury trial, he was found guilty on both counts.

Appellant words the issues on appeal as follows:

"1. Whether the state legislature may amend the statutes governing defenses to criminal acts based on mental illness, and thereby curtailing the variety of ill-

---

* Became Chief Justice on January 1, 1985

** Chief Justice at time of oral argument

*** ROSE, Justice, having recused himself, HARTMAN, District Judge, was assigned pursuant to order of the court entered November 7, 1984

1. This case was originally assigned to Chief Justice Thomas on November 19, 1984 for the rendering of a proffered majority opinion. No such opinion being forthcoming, it was reassigned to Justice Rooney on July 30, 1985. Justice Rooney distributed a proffered opinion to the court on August 26, 1985. Chief Justice Thomas distributed his dissenting opinion on November 6, 1985.

2. Section 6–7–201, W.S.1977, reads in pertinent part:

"(a) Whoever, intentionally enters, or attempts to enter, any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than fourteen (14) years:

"(i) Any building or dwelling; or

\* \* \* \* \* \*

"(b) Whoever violates subsection (a) under any of the following circumstances may be imprisoned not less than five (5) years nor more than fifty (50) years:

\* \* \* \* \* \*

"(ii) While unarmed, but arms himself with a dangerous weapon while still in the burglarized enclosure."

This section has been amended and renumbered as § 6–3–301.

3. Section 6–7–101, W.S.1977, provides:

"Any person who willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto or any standing timber on public or privately owned land, whether the property of himself or of another, shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than two (2) nor more than twenty (20) years."

This section has been amended and renumbered as § 6–3–101.

nesses applicable, placing the entire burden of proof and persuasion upon the accused, and then applying such amended statutes to criminal acts completed prior to the effective date of the amendments.

"2. Whether a state legislature, within due process restrictions, may amend statutes controlling the substantive rights of defendants claiming mental disorders as a defense to the capacity to form the essential element of criminal intent, place the entire burden of proof and persuasion upon the defendant to prove his lack of capacity, and explicitly eliminate the requirement that the State prove capacity beyond a reasonable doubt."

These issues were premised upon the fact that the jury was instructed as to the plea of not guilty by reason of mental illness or deficiency under §§ 7–11–304(a) and 7–11–305(b), as they were amended subsequent to the incidents in question rather than under the statutes before amendment and as they were in effect at the time of the incidents in question.

We reverse and remand.

Appellant and Mrs. Sylvia Lewis were divorced on May 23, 1983. Subsequently, Mrs. Lewis began living with Mr. Dan Marlin in Gillette. Appellant was not happy with this relationship, and began following Mrs. Lewis around town. On the evening of June 6, 1983, appellant entered the Marlin-Lewis trailer house, burglarized the house, poured gasoline in various locations therein, and set the trailer house on fire. The fire destroyed the trailer house and everything left inside. Appellant later admitted to Mrs. Lewis that he had stolen certain items from her and set fire to the trailer. Appellant was charged by criminal complaint on November 14, 1983, convicted on April 11, 1984, and sentenced on April 24, 1984.

The relevant statutes on mental illness in effect at the time of the commission of the crime [4] read as follows:

Section 7–11–304(a):

"(a) A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."

Section 7–11–305(b):

"(b) The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged and the mental responsibility of the defendant. However, every defendant is presumed to be mentally responsible and the burden of first going forward and entering evidence on the issue of mental responsibility is upon the defendant."

These statutes were amended in 1983 to be effective on July 1, 1983. The following was added to § 7–11–304(a):

"As used in this section, the terms mental illness or deficiency mean only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6–1–202(c) [§ 6–1–202(b) ]."

Section 7–11–305(b) was changed to read:

"(b) The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged. Every defendant is presumed to be mentally responsible. The defendant shall have the burden of going forward and proving by the greater weight of evidence that, as a result of mental illness or deficiency, he lacked capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

The jury instruction was obviously given under the amended statute:

"INSTRUCTION NO. 15

"The defendant has entered a plea of not guilty by reason of mental illness or deficiency. Every person is presumed to be mentally responsible. To overcome that

---

**4.** Appellant did not contest the fact that he broke into the trailer house, that he stole property, and that he set the fire. His entire defense was that he was not mentally responsible.

presumption, the defendant must prove to your satisfaction that the following (1 & 2) are more likely true than not true:

"1. At the time of the criminal acts alleged, the defendant lacked substantial capacity, EITHER

"a. to appreciate the wrongfulness of the acts, OR

"b. to conform his conduct to the requirements of law;

"AND

"2. That the defendant's lack of substantial capacity was due to a mental illness or deficiency.

"Mental illness or deficiency means only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality.

"In deciding the issue of mental responsibility, you should consider all of the evidence presented on that issue whether presented by the State or by the defendant.

"If you conclude it is more likely that the defendant was not mentally responsible at the time of the alleged criminal acts then you should find him not guilty by reason of mental illness or deficiency. If you find he was mentally responsible at the time then you should consider whether the State has proved all of the elements of the offense(s) beyond a reasonable doubt."

These provisions relative to the insanity plea are found in Ch. 179, Session Laws of Wyoming, 1983. With respect to effective dates, that chapter provides the following:

"Section 2. This act is effective July 1, 1983 and applies to individuals against whom a criminal complaint is filed on or after July 1, 1983. Criminal complaints

filed prior to July 1, 1983 shall be governed by the laws in effect prior to July 1, 1983."

Appellant argues that applying the amendments to the insanity defense to acts completed prior to the effective date of the statute violates his right to be protected from ex post facto legislation, inasmuch as the amendments change the definition and nature of the defense as well as shift the burden of persuasion.

"Art. 1, § 10, United States Constitution, provides no state shall pass any ex post facto law; and Art. 1, § 35, Wyoming Constitution, provides no ex post facto law shall ever be made. An ex post facto law may be one which alters the situation of an accused to his disadvantage. In the early case of *In re Wright*, 3 Wyo. 478, 27 P. 565, 566, recognition was given to the principle that an ex post facto law may be one which, 'in relation to the offense or its consequences, alters the situation of a party to his disadvantage.'

"The real question is whether the person accused has been deprived of a substantial right by reason of the change in law. See *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506, 510; and *People v. Edenburg*, 88 Cal.App. 558, 263 P. 857, 860. Or, as stated in *People ex rel. Lonschein v. Warden, Queens House of Deten. for Men*, 43 Misc.2d 109, 250 N.Y. S.2d 15, 19, the constitutional interdiction of ex post facto laws reaches out to every law which deprives the accused of any substantial right or immunity possessed by him at the time when he is said to have committed the offense charged." (Footnotes omitted.) *In re Jones*, Wyo., 500 P.2d 690, 692 (1972).[5]

---

**5.** We note that in Title 6, the legislature recognized the prohibition against ex post facto laws by enacting § 6-1-101, W.S.1977, in March of 1982, with an effective date of July 1, 1983:

"(a) This act may be cited as the Wyoming Criminal Code of 1982.

"(b) Except as provided in this section, this act does not apply to offenses committed prior to its effective date and prosecutions for the offenses shall be governed by the prior

law, which is continued in effect for that purpose, as if this act were not in force. An offense was committed prior to the effective date of this act if any of the elements of the offense occurred prior to the effective date.

"(c) In a case pending on or after the effective date of this act, involving an offense committed prior to the effective date:

"(i) Procedural provisions of this act govern insofar as they are justly applicable and their

The State contends that the statutes in question are not ex post facto because appellant failed to present any credible evidence of his insanity at the time he committed the acts in question, and thus an insanity instruction need not even have been given.

Rule 7.04, W.R.A.P., provides that:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

In *Spilman v. State*, Wyo., 633 P.2d 183, 185 (1981), we said:

"This has been read to mean that an error must be injurious or prejudicial to warrant reversal. * * * *"

The testimony was not contradictory in that appellant had the ability to distinguish right from wrong. Appellant's psychiatric witness so testified. However, this witness did contradict the other expert witnesses in testifying that appellant could not resist his impulses at the time of the incidents, i.e., that "he could not conform his conduct to the requirements of the law." Under the original statute, lack of substantial capacity to conform his conduct to the requirements of law as a result of mental illness or deficiency was sufficient to relieve a person of responsibility for criminal conduct.

 Under a proper instruction and for the purpose of determining the sufficiency of the evidence for conviction, we would disregard the contradictory evidence of appellant's witness and consider only the evidence of the successful party. On appeal, we assume the evidence in favor of the successful party to be true, disregarding entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. *Pine Creek Canal No. 1 v. Stadler*, Wyo., 685 P.2d 13, 17–18 (1984); *Anderson v. Bauer*, Wyo., 681 P.2d 1316, 1319 (1984).

However, in this case the alleged error is in Instruction No. 15, and the question is whether or not appellant was prejudiced by it having been given rather than an instruction under the original statute. More specifically, did the State have a lesser burden of proof under the instruction than it would have had if the instruction was under the original statute?

Since the original act required the prosecution to "prove beyond a reasonable doubt * * * the mental responsibility of the defendant," and the amended statute required the defendant to prove the same "by the greater weight of evidence," it is obvious that the appellant could have been prejudiced. The jury here found that he had not established it to be more likely than not that he could not conform his conduct to the requirements of law—as required by the instruction. Under an instruction pursuant to the old law, the jury would have had to find that his ability to conform his conduct to the requirements of law had to be proven beyond a reasonable doubt. The burden was shifted and the State was relieved of the obligation to establish the status "beyond a reasonable doubt."

The State supports its argument that "there was no credible evidence that he [appellant] was insane," and that "compe-

application does not introduce confusion or delay;

"(ii) Provisions of this act according a defense or mitigation apply, with the consent of the defendant; and

"(iii) If the penalty for the offense under this act is different than the penalty under prior law, the court shall impose the lesser sentence."

Subsections (b) and (c) of § 6–1–101 were amended in March 1983, also with an effective date of July 1, 1983:

"(b) This act does not apply to crimes committed prior to the effective date of this act.

Prosecutions for a crime shall be governed by the law in effect on the date when the crime occurred. A crime was committed prior to the effective date of this act if any of the elements of the crime occurred prior to the effective date of this act.

"(c) In a case pending on or after the effective date of this act, involving a crime committed prior to the effective date if the penalty under this act for the crime is different from the penalty under prior law, the court shall impose the lesser sentence."

tent evidence of insanity was not presented" by reference to the evidence that appellant could distinguish right from wrong. It overlooks the conflicting evidence relative to appellant's ability to conform his conduct to the requirements of law.

■ Appellant was prejudiced by failing to give the instruction under the statute in effect at the time of the incident.

Although the disposition of this case is decided on the first issue on appeal, making consideration of the second issue unnecessary for that purpose, we would normally address the second issue as one bound to arise again on retrial. *Rocky Mountain Oil and Gas Association v. State*, Wyo., 645 P.2d 1163, 1167 (1982); *Madison v. Marlatt*, Wyo., 619 P.2d 708, 714 (1980). However, subsequent to the appeal of this case, we addressed the second issue on appeal and disposed of it in *Brooks v. State*, Wyo., 706 P.2d 664 (1985).

Reversed and remanded.

THOMAS, C.J., filed a dissenting opinion.

THOMAS, Chief Justice, dissenting.

I feel I must dissent from the conclusion of the court that this conviction must be reversed. Certainly the trial judge will have substantial reason to be disappointed in the result reached by the majority. He did his very best to treat with this problem, and the record demonstrates unequivocally that he invoked the amended statute with the acquiescence of both the defendant and the State of Wyoming. In some instances the only appropriate comment is a classic cliche, and our rule of law of the case covers this situation like a blanket. I would hold that because the case was tried and the instruction given under the amended statute with the clear concurrence of the defendant the instruction became the law of this case, and the judgment should be affirmed.

There can be no question that Section 2 of Chapter 179, Session Laws of Wyoming, 1983, was the basis for the comment of the trial court when, more than one month prior to trial in proceedings which addressed the issue of insanity including the burden of proof, it called to the attention of counsel the issue of whether the jury should be instructed under the statute as it read prior to July 1, 1983 or as it read after July 1, 1983. At that time the judge said:

"I want to say one other thing on the record here, and that is I raised the question with you before of whether or not this was—and in spite of the fact that the statute says that it will take effect for crimes charged after July first, 1983 —I raised that question of is that procedural or is that substantive, and since neither one of you have addressed that I assume that you both conclude that it's procedural and there are no problems with it."

So far as the record discloses neither counsel made any comment.

There then occurred a discussion of instructions, and with respect to the insanity instruction this dialogue occurred:

"[COUNSEL FOR DEFENDANT]: Your Honor, it has just come to my attention this—this—this instruction is still under the old statute.

"THE COURT: Right.

"[COUNSEL FOR DEFENDANT]: And I didn't even pay any attention to that after it was drafted, so if you'd like me to redraft an instruction I'd be happy to do that. Or we can just amend it right here."

After that there was dialogue which resulted in a conclusion on the part of the court that it would hold a hearing prior to trial to determine whether the defendant was able to produce sufficient evidence of insanity to meet his burden of showing insanity by a preponderance of the evidence. The court indicated that if the defendant could not do that the issue would not be submitted to the jury. Later in the day, however, the court again met with counsel, and the court then said:

"THE COURT: I was doing some additional research over the noon hour, and I discovered that I made two errors when we were talking before.

"One of the errors was that, based upon—I was reading something into the statutes which is just not there, and that was that the State retains some obligation to prove the defendant's sanity beyond a reasonable doubt.

"Now, that's not in the statutes. And I guess I was getting confused by reading some of those other cases on affirmative defenses. And, so, that obviates the need, in my opinion, for this evidentiary hearing, and I intend to instruct the jury that it will be—well, I'm going to instruct them substantially as follows:

" 'Under certain circumstances, a person is not responsible for his criminal acts.

" 'The defendant has entered a plea of not guilty by reason of mental illness or deficiency. Every defendant is presumed to be mentally responsible.

" 'To overcome that presumption, the defendant must prove to your satisfaction by a greater weight of the evidence the following:

" 'First, at the time of his acts, the defendant lacked substantial capacity either, (a), to appreciate the wrongfulness of the acts, or (b), to conform his conduct to the requirements of law, and that the lack of substantial capacity was due to a mental illness or deficiency.

" 'Mental illness or deficiency means only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication.

" 'In considering whether the defendant has met the burden of proving those propositions by a greater weight of the evidence, you should consider all of the evidence presented on that subject, whether presented by the State or by the defendant. If, at the conclusion—if you conclude that it's more likely than not that the defendant has overcome the presumption, you should find him not guilty.'

"Now, I will entertain variations of that as you all may wish to submit. But that's substantially—she can type it for you—substantially what I'll be—what I have in mind."

No objection was made at that time to the proposed instruction by the defendant.

This matter came up again some five days prior to trial when the following dialogue occurred:

"[COUNSEL FOR DEFENDANT]: I believe there was a—I received a copy of an instruction that I believe you sent around on Friday. I don't know if Jack has seen that yet or not.

"THE COURT: I thought I sent it over earlier than Friday but okay. That's the mental illness and deficiency?

"[COUNSEL FOR DEFENDANT]: Yes, that's the Court's proffered instruction. I just—I have no objection to this. I think it's all right, and, so, I don't know if—if—well—well—

"THE COURT: It's changed somewhat from the one I previously had done.

"[COUNSEL FOR DEFENDANT]: The only—the only item that I wanted to make note of was where you mentioned in your definition of mental illness and you talk about something that's not attributable primarily to self-induced intoxication.

"I would assume that that was included in there only because it's just standard, part of the definition, not because there's any evidence of intoxication in this particular case.

"THE COURT: Right. It's—it's right out of the statute.

"[COUNSEL FOR DEFENDANT]: Right, Okay.

"[COUNSEL FOR THE STATE]: We have no objection to it."

For completeness I note that the following colloquy occurred after the instructions were read to the jury and after closing argument:

"THE COURT: As I was reading the jury instructions, I remembered that there was an error in Instruction No. 11 where it provided that the evidence—if you find from the evidence in the case

beyond a reasonable doubt that the defendant was mentally responsible—as I was reading it, I recognized that I'd made the error, and I thought about going back and correcting it but decided that it would unnecessarily highlight that for the jury. So, what I have done is struck that portion—obliterated it from the written jury instructions.

"If there is an objection to that, put it on the record now.

"[FIRST COUNSEL FOR DEFENDANT]: This is how you read it, with that out of it, didn't you?

"THE COURT: I read it with that in, unfortunately.

"[FIRST COUNSEL FOR DEFENDANT]: I didn't catch it.

"[SECOND COUNSEL FOR DEFENDANT]: I didn't catch it.

"THE COURT: I don't see how it can possibly be a prejudice to the defendant because it would certainly be in his favor. And it's not the law, and I have struck it out and obliterated it, and I've done that on the original and on both copies of the jury instructions which are going to go to the jury.

"Mr. Sundquist also mentioned it in his closing and mentioned it beyond a reasonable doubt. If there is any confusion, I would think it would go to—to the benefit of the defendant.

"[COUNSEL FOR THE STATE]: It was a little too late for me to change once I had said it and realized the problem.

"THE COURT: Well, I had the same problem, of course. Do you want to have any—do you want to—

"[FIRST COUNSEL FOR DEFENDANT]: I think we probably got the best of it already.

"[SECOND COUNSEL FOR DEFENDANT]: We have nothing to say, so—

"THE COURT: Okay. All right.

"THE COURT: What I wanted was if you had any objection before I sent it in to the jury. I wanted to give you the opportunity to get it on the record.

"Here are the jury instructions, then."

With respect to law of the case in criminal matters the court has said:

"We make no determination as to the correctness of the instruction on entrapment because there was no objection to it by the State, and therefore as to the state the instruction became the law of the case and is not open to review by this court on appeal. *Vinich v. Teton Construction Co.*, Wyo., 518 P.2d 137, 138; *Gifford-Hill Western, Inc. v. Anderson*, Wyo., 496 P.2d 501, 503, and 88 C.J.S. Trial § 425, p. 1151. * * *" *Janski v. State*, Wyo., 529 P.2d 201, 202 (1974), vacated on rehearing for other reasons, 538 P.2d 271 (1975).

"Neither instruction being objected to by either party, they became the law of this case." *Russell v. State*, Wyo., 583 P.2d 690, 700 (1978).

" * * * [T]his instruction nevertheless became the law of this case, in the absence of objection. *Matter of Estate of Mora*, Wyo., 611 P.2d 842, 846 (1980) and cases there cited. * * *" *Apodaca v. State*, Wyo., 627 P.2d 1023, 1027, n. 6 (1981).

While it may be conceded that the law of the case rule is controlled by the concept of plain error, my interpretation of the record in this case is that there was sufficient participation and acquiescence by the defendant with respect to these instructions that the concept of invited error should be invoked. In similar instances we then have taken the stand that a reversal of a conviction will not be premised upon invited error. *Settle v. State*, Wyo., 619 P.2d 387 (1980); *Burns v. State*, Wyo., 574 P.2d 422 (1978).

One final matter occurs to me and that is whether the evidence adduced by the defendant was sufficient to raise an issue of mental illness or deficiency. It seems clear to me that under the new version of the statute and the definition given to the jury the defendant's evidence was not sufficient. His medical expert testified only as to a severe depression and, I think, conceded that this is not a mental illness under the language of the statute. Neither is it a

mental deficiency according to the definition used in § 7–11–301, W.S.1977. Even if the earlier statute is to be applied I have a serious question as to whether the defendant met his burden of going forward and entering evidence on the issue of mental responsibility. In this instance counsel for the state apparently conceded that this had been done. Upon any retrial, however, I am persuaded that counsel should not make the same concession unless some evidence beyond that which is set forth in this record is adduced on behalf of the defendant.